Strafford,
No. 5654.

MADBURY & a.

*v.*

DURHAM & a.

Argued November 7, 1967.
Decided February 29, 1968.

*Burns, Bryant, Hinchey & Nadeau* ( *Mr. Bryant* orally ), for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* ( *Mr. Hollis* and *Mr. Gross* orally ), for the defendant town of Durham.

*Calderwood, Silverman & Ouellette,* for the defendant Oyster River Cooperative School District, filed no brief.

DUNCAN, J. This is a bill in equity by the towns of Madbury and Lee alleging improper application of foundation aid paid by the State to the defendant cooperative district, with substantial indebtedness resulting from the defendant town of Durham to the plaintiff towns. The bill seeks an order for payment of the amount found to be owing. Trial was by the Court ( *Morris,* J. ). The Court made certain findings of fact, and transferred without ruling certain requests of the parties for findings and rulings, together with exceptions of the parties to findings and rulings made.

The defendant Oyster River Cooperative School District was established as of July 1, 1954 by the three town districts of Madbury, Lee and Durham. In the ensuing ten years, Lee qualified for foundation aid in each year, and Madbury similarly qualified for the years 1956-7 through 1963-4. See RSA 198:8-15. Under what is now RSA 195:15 this aid was paid to the cooperative district. Laws 1951, 213:1, par. 15.

Since its inception, the operational costs of the Oyster River Cooperative School District have been apportioned among the component towns in accordance with the formula established by Laws 1951, 213:1, par. 8 ( 2 ) the essence of which is now contained in RSA 195:7 II, as follows: "One-half of all such costs shall be apportioned on the basis of the ratio that the equalized valuation of each pre-existing district bears to that of the cooperative district and one-half shall be apportioned on the average daily membership for the preceding year." During this period also, the costs which were so apportioned were net costs after application of the foundation aid from the State, rather than gross costs before such application, as required by the interpretation placed upon the pertinent statutes in *Gilsum* v. *Monadnock School District,* 105 N. H. 361, and *Monadnock School District* v. *Fitzwilliam,* 105 N. H. 487. These decisions held that under RSA 195:7 II, *supra,* foundation aid should be applied against the share of operational costs allocated to each of the pre-existing districts which would have been entitled to receive such aid under RSA ch. 198, *supra,* had such district not become a part of a cooperative district.

The plaintiffs claim that over the ten year period Lee was assessed by the cooperative $42,636.66 more than it should have been assessed under the rule of the *Monadnock* cases, *supra,* and that Madbury was similarly overassessed in the sum of

$22,057.05. These amounts they seek to recover in this proceeding.

Subject to exception by the plaintiffs, the Trial Court found that in meetings preliminary to the formation of the cooperative, the school boards of the participating towns recognized that foundation aid would be deducted before apportionment of operating expenses of the proposed cooperative; and understood that this was required by statute, and that as a result, Durham would be paying a higher cost per pupil than the other towns, because of the proposed allocation of costs partly in proportion to the relative equalized or adjusted valuations of the towns involved, of which the valuation of the town of Durham was highest.

The Court also found that "reports to the voters," circulated prior to meetings held to consider organization of the cooperative, contained a statement: "State Aid has been subtracted," which prefaced detailed figures showing a breakdown of costs as they would be allocated among the districts. Subject to exception by the plaintiffs, the Court found that the reports thus indicated that "state aid would be deducted from operating expenses prior to the allocation thereof among the . . . towns," and that the votes of the towns favorable to organization of the cooperative were based "in part" upon representations in these reports.

The Court further found that the calculations laid before the voters, as well as those used in subsequent years, were made by the State Department of Education, and used by the State Tax Commission in approving tax rates for the several towns over the period in question.

Subject to the defendant's exception, the Court found that the plaintiffs made their overpayments to the cooperative "because of their ignorance of, or an innocent mistake as to, their legal right to have Foundation Aid . . . deducted from their individual assessments, instead of from the total budget" of the cooperative. The Court further found that at the meetings preceding the organization of the cooperative, there was no discussion by the voters as to how foundation aid should be allocated.

The Court transferred without ruling certain requests of the parties bearing upon how costs should have been apportioned, whether any indebtedness from the defendant to the plaintiffs arose because of the method employed, whether the plaintiffs may recover interest upon any such indebtedness, and whether recovery is precluded in part by the statute of limitations.

Specifically, in addition to exceptions of the parties, the Court transferred without ruling the question of whether "any sum is due to [the plaintiff towns] because of the manner of application of foundation aid," and if so what formula should be employed to determine the amount.

It is obvious that if the rule adopted by the *Monadnock* cases, *supra,* is to apply to this case, the foundation aid paid to the cooperative on account of the needs of the plaintiff towns was wrongly applied during the period in question. For this reason the defendant has asked for reconsideration of the *Monadnock* rule, and has reviewed the statutory history in detail, suggesting that pertinent considerations were not fully advanced before this court by the parties to the *Monadnock* cases.

The defendant's argument rests in large part upon a contention that the statutory formula contained in Laws 1951, 213:1, par. 8 under which the allocation of the costs of operation of a cooperative district was to be made in whole or in part according to adjusted valuations, resulted in a "subsidy," flowing from towns with higher valuations to towns with lower valuations. It is contended that this was recognized by the Legislature when the bill which became Laws 1951 ch. 213 was submitted to it by the Department of Education. H. B. 240, 1951 session. This bill provided in section 7 thereof that all money "to be raised for educational purposes" by the constituent towns of a cooperative should be apportioned wholly according to "equalized valuations." The "subsidy effect" of this provision, it is suggested, was modified in part, by the Legislature, in the provisions of Laws 1951, 213:1, par. 8, *supra,* permitting a division of cost based one half upon the proportion of "average daily membership" attending the component district schools in the preceding year. The argument is made that to further temper the "subsidy effect" of apportionment according to valuation, the Legislature intended that the cooperative as such should have the benefit of any foundation aid, without allocation to the component districts from which it was derived, so that the "subsidy" afforded by a district with higher valuation would thereby be reduced by a share of the foundation aid applied against total costs before allocation.

The mathematical fact that under the provisions of Laws 1951, 213:1, par. 8, *supra,* a town having a proportionally higher valuation will bear a proportionally higher share of the costs

was at the foundation of the *Monadnock* cases, whether characterized from one viewpoint as a "subsidy," or from the opposing viewpoint as an equitable division of the costs.

The feature of the statutes which must principally be relied upon to establish a legislative intent that foundation aid should be applied to operating costs before allocation of costs among the constituent towns appeared in the amendment of the chapter relating to such aid inserted by Laws 1951, 148:9-a ( *Cf.* RSA 198:10-b ) and in the amendment of the cooperative school district law by Laws 1951, 213:1, par. 15. The former provided that aid should be paid "to the district legally responsible for the education of . . . pupils" and that it should be paid "on or before January fifteenth of that school year." Laws 1951, 148:9-a, *supra*. And see Laws 1951, 213:1, par. 15, *supra,* now RSA 195:15.

The effect of these provisions and the legislative intention which they disclosed were the subject of consideration in deciding *Gilsum* v. *Monadnock School District,* 105 N. H. 361, *supra.* We see no reason to depart from the conclusion there reached, namely that the Legislature intended "that a town which is a part of a cooperative school district should benefit from foundation aid to the same extent that its pre-existing district would have benefited if it still existed." *Id.,* 365.

In sum, the provisions of 1951, 213:1, par. 15, and 1951, 148:9-a, *supra,* eliminated the necessity of passing foundation aid through the hands of constituent districts as previously required by Laws 1947, 199:12, by providing for payment directly to the cooperative and by a specified date. They were not intended to deprive the more needy districts or towns of the full benefit of the state aid to which they were otherwise entitled. Upon reconsideration, we reaffirm the holdings of the *Monadnock* cases, as they bear upon the issues in the case before us.

The defendant argues that if the *Monadnock* cases are considered to be still viable, as we hold they are, equitable considerations require that the *Monadnock* rule should not be applied retroactively; that money paid by the plaintiffs under a mistake of law may not be recovered; and that in any event recovery for payments made before February 1960 is barred by laches and by the statute of limitations. RSA 508:4. *Cote* v. *Cote,* 94 N. H. 372. See *Hillsborough County* v. *Manchester,* 49 N. H. 57, 62.

The defendant relies heavily upon the broad argument that equitable considerations require judgment in its favor in these

proceedings. With this contention we are in agreement. Unlike the *Gilsum* case, *supra,* where the plaintiff raised the question of the proper application of foundation aid as soon as its first budget was proposed by the cooperative ( See *Monadnock School District* v. *Fitzwilliam,* 105 N. H. 487, 493 ), in the case before us the issue was not raised until almost two years after the *Gilsum* case was decided, although foundation aid had been applied without proper allocation for ten years before that decision. It is evident from the findings of the Trial Court, that the burden of the relief sought by the plaintiffs will as the defendant argues "fall upon a far different body of taxpayers in Durham than that which existed during the years in question, and the benefit will go to far different bodies of taxpayers in Lee and Madbury than those which existed during the years in question."

The findings of the Trial Court indicate that the method employed in the years in question, by which foundation aid was deducted before allocation of expenses between the component towns, was known to the schoolboards of the districts and selectmen of the towns involved, and was disclosed to the voters by special reports before the organization meetings and by annual reports thereafter. The method employed had the sanction of the State Department of Education, and was relied upon without objection by the State Tax Commission in approving tax rates for the years involved. The transactions which the plaintiffs seek to set aside are closed and completed. The circumstances do not differ materially from those presented by *Keene* v. *County,* 79 N. H. 198. There it was held that a suit to recover overpayments made for a period of years as a result of erroneous tax warrants issued to the towns within a county could not equitably be maintained where correction could not be made "so promptly as to be effected before substantial change occurred in the proportions of public taxes assigned the towns." *Id.,* 200. See also, *Bretton Woods Co.* v. *Carroll,* 84 N. H. 428.

Within the limitation of the statute of limitations the defendant would still be faced with alleged liabilities of $29,320.74 to Lee, and $18,734.78 to Madbury. The inequities which would be inherent in assessing such sums against the present taxpayers of Durham, at rates and valuations differing from those in effect when they should have been paid are obvious. See *Keene* v. *County, supra,* 200.

It is a fundamental principle that equity will not grant relief

where changed conditions cannot be disturbed without producing injustice. *Keene* v. *County, supra; Sawtelle* v. *Tatone,* 105 N. H. 398, 404; *Johnson* v. *Shaw,* 101 N. H. 182. See *Allen* v. *Coburn,* 65 N. H. 37; *Chamberlain* v. *Lyndeborough,* 64 N. H. 563. This principle leads us to hold that the *Monadnock* rule should not be invoked retroactively in this proceeding. *Phillips Exeter Academy* v. *Gleason,* 102 N. H. 369, 376, and cases cited. *Cf. Thompson* v. *Phillips Exeter Academy,* 105 N. H. 153. Accordingly, the plaintiff's bill will be dismissed and judgment entered for the defendant town. In order that the decree may bind all of the parties concerned, the order of the Superior Court which dismissed Oyster River Cooperative School District as a party defendant is vacated.

*Bill dismissed; judgment for the defendants.*

All concurred.