Sullivan
No. 81-091

THE STATE OF NEW HAMPSHIRE

v.

DENNIS GODDARD

May 21, 1982

*Gregory H. Smith*, attorney general (*Paul Barbadoro*, attorney, on the brief and orally), for the State.

*Mahady, Johnson, Dunne, Hershenson & Scott*, of Norwich, Vermont (*Peter H. Carter* on the brief and orally), for the defendant.

KING, C.J.   The defendant, Dennis Goddard, was indicted on two counts of arson and three counts of burglary. After a trial by jury, he was convicted on all five charges. The defendant appeals, claiming that the Trial Court (*Johnson*, J.) improperly denied his motion to suppress his confession. We agree and, therefore, reverse.

After two fires and three burglaries in Charlestown, New Hampshire, the police began an investigation, during which they

received information concerning the defendant, a suspect in a Vermont arson case. The defendant was in custody at the Woodstock Correctional Center in Vermont. Before interviewing the defendant, the police officers gave the defendant his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). The defendant refused to answer any questions. A short time later, however, the defendant changed his mind and called the police officers back. Again, the officers informed the defendant of his *Miranda* rights. After signing a form waiving his rights, the defendant confessed to all five crimes and provided the officers with the details. Before trial, the defendant sought to have the confession suppressed, but the trial court denied his request.

The defendant argues that he was incapable of making a voluntary confession or of voluntarily and knowingly waiving his *Miranda* rights because he was experiencing *delirium tremens* from withdrawal from alcohol and drugs. Testimony at the suppression hearing supported the defendant's assertion that he was suffering from *delirium tremens*, but there was conflicting testimony regarding whether the defendant was coherent and capable of voluntarily confessing or waiving his rights.

The testimony at the suppression hearing was as follows. One police officer testified that although the defendant seemed nervous, he was coherent. The other police officer testified that the defendant was visibly shaking and broke down into tears at several points during the interrogation, and that, in his opinion, the defendant was suffering *delirium tremens*. The officer stated, however, that the defendant was coherent. The officer claimed that towards the end of the interrogation, the defendant asked for medical attention.

The defendant testified that, prior to his admittance to the Woodstock Correctional Center, he had been drinking heavily and taking Valium. He then stated that he did not remember hearing or waiving his *Miranda* rights the day of interrogation. He claimed that, before the interrogation, the police officers promised medical assistance if he cooperated with them. Finally, he stated that he was not in "good shape" during interrogation or for "four days after that."

The defendant's counsel also produced the testimony of a physician's assistant, who examined the defendant a short time after the interrogation. He stated that, at that time, the defendant was suffering from *delirium tremens* and was "extremely depressed, very anxious and afraid." Additionally, he believed that the defendant was in need of medical attention. He stated, however, that the defendant "was coherent to a certain extent." He could not judge

whether the defendant could have made a voluntary and knowing confession or waiver of his rights.

A psychiatrist, testifying for the defendant, stated that he believed that the defendant had been suffering *delirium tremens* during interrogation. He then stated that persons going through *delirium tremens* are generally experiencing "panic, severe anxiety, an overwhelming fear, confusion and a high degree of suggestability." In the psychiatrist's opinion, a person suffering *delirium tremens* would not be "in a position . . . to carefully weigh questions or issues that may have long term implications." He stated that a person in this condition would have confessed anything if promised medical attention. Finally, the psychiatrist concluded that although the defendant may have shown signs of coherence, his coherence did not alter his inability to make long term decisions.

The last witness to testify was another psychiatrist. Although he had never examined the defendant, he testified that the defendant's signature on his confession was "shaky" and indicated a condition of alcohol and drug withdrawal. He agreed with the other psychiatrist regarding the symptoms of *delirium tremens*, and although he could not answer whether the defendant had possessed the capability to protect his rights during interrogation, he stated his belief that "[the defendant's] judgment was significantly altered . . . at that time."

■■ The State has the burden of proving beyond a reasonable doubt that the defendant voluntarily waived his *Miranda* rights and voluntarily confessed. *State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978); *see State v. Perkins*, 121 N.H. 713, 715, 435 A.2d 504, 505 (1981). Even viewing the evidence in the light most favorable to the State, we must conclude that a reasonable doubt existed as to the defendant's ability to voluntarily waive his rights and confess. The evidence was overwhelming that the defendant was experiencing *delirium tremens*, and even the witnesses for the State testified that the defendant seemed agitated and in need of medical attention. For these reasons, we must reverse the trial court's decision to deny the defendant's motion to suppress. Because of our decision, we need not reach the other issues presented by the defendant.

*Reversed and remanded.*

All concurred.