Rockingham
No. 81-316

SHEILA A. PROVENCAL

v.

ARTHUR C. PROVENCAL

September 8, 1982

794

*Leslie R. Long*, of Concord, by brief for the plaintiff.

*James J. Troisi*, of Salem, by brief for the defendant.

BOIS, J. The plaintiff, Sheila A. Provencal, appeals from an order of the Superior Court (*Bean*, J.) approving a Master's (*Gary Cassavechia*, Esq.) recommendation to award to her former husband, the defendant Arthur C. Provencal, physical custody of the parties' teenage daughter. We affirm in part, reverse in part, and remand.

In May 1980, the plaintiff filed a libel for divorce, alleging that irreconcilable differences had caused the irremediable breakdown of the parties' marriage. *See* RSA 458:7-a (Supp. 1979). Counsel for the parties agreed on the selection and appointment of a guardian ad litem for Sherri Provencal, the parties' fourteen-year-old daughter. *See* RSA 458:17-a (Supp. 1979). The guardian interviewed Sherri and her parents, and submitted to the master a report recommending that the parties be awarded joint custody of Sherri and that physical placement be with the defendant father. Although the master permitted both parties' counsel to review the report, it

ordered them not to disclose the contents to the parties or to any other individuals.

At a hearing in June 1981, the plaintiff called the guardian ad litem as a witness and questioned him concerning his qualifications as well as the methods which he used in his investigation. In accordance with the guardian's report, the master recommended that the parties be given joint custody of Sherri and that physical custody be awarded to the defendant. The trial court approved the master's recommendation and the plaintiff appealed to this court.

The plaintiff presents in her brief an inordinate number of questions for review, many of which are general and obtuse in nature. We discourage the submission of such broad and multitudinous questions and will confine our review to the plaintiff's principal arguments.

The plaintiff argues that, as a parent, she was entitled to certain due process protections during the custody proceedings. She contends that the manner in which the trial court appointed and used the guardian ad litem in this case denied her these protections. Specifically, she claims that her rights were violated because she had the opportunity neither to question the guardian prior to his appointment nor to review and attack his report. She also challenges the guardian's methods of investigation, claiming, *inter alia*, that the guardian improperly interviewed Sherri without the assistance of counsel and in the presence of the defendant.

■ We need not reach the merits of the plaintiff's claim that she had a right to question the guardian ad litem before his appointment. The record reveals that, prior to the appointment of the guardian ad litem, the plaintiff's co-counsel at trial discussed the potential candidates for this position and voluntarily agreed to the appointment of the individual who served as the guardian in this case. The record indicates that the plaintiff's counsel did not seek to examine the guardian ad litem at that time and did not then challenge the appointment process. Consequently, we hold that the plaintiff is precluded from raising this issue on appeal. *See Dubois v. Dubois*, 122 N.H. 532, 536, 446 A.2d 1181, 1183 (1982); *Carbur's, Inc. v. A & S Office Concepts, Inc.*, 122 N.H. 421, 423, 445 A.2d 1109, 1111 (1982).

■■ Before discussing the merits of the plaintiff's remaining due process arguments, we will briefly examine the role of the guardian ad litem in custody and related proceedings. In this jurisdiction, a guardian ad litem represents the interests of the child and is treated as a full party to all proceedings. RSA 458:17-a

(Supp. 1979). The guardian ad litem serves primarily as an advocate for the best interests of the child. *See Veazey v. Veazey,* 560 P.2d 382, 386–87 (Alaska 1977); *de Montigny v. de Montigny,* 70 Wis. 2d 131, 138–40, 233 N.W.2d 463, 467–68 (1975); Uniform Marriage and Divorce Act § 310 & commissioners' note (1970 Act, *amended* 1971 and 1973). *See generally* Casasanto, *Guardians Ad Litem: A Proposal to Better Protect the Interests of Children of Divorce,* 20 N.H.B.J. 35, 47–50 (1978). Nevertheless, the guardian ad litem should also assist the court and the parties in reaching a prompt and fair determination, while minimizing the acrimony during this process. *See Justice For Juveniles,* A Report by the Family and Housing Law Clinic, Franklin Pierce Law Center, at 120 (1981); *see also Allen v. Allen,* 78 Wis. 2d 263, 268, 254 N.W.2d 244, 247 (1977).

■■ With these principles in mind, we turn to the plaintiff's claim that the order forbidding her from seeing the guardian's report violated her due process rights. We agree with the plaintiff that a parent's interest in decisions regarding the custody and rearing of his children is a fundamental right which is protected by the due process provisions of the State and Federal constitutions. *State v. Robert H.* _____, 118 N.H. 713, 715, 393 A.2d 1387, 1388–89 (1978); *Wisconsin v. Yoder,* 406 U.S. 205, 232 (1972); *see* N.H. CONST. pt. I, art. 2; U.S. CONST. amend. XIV, § 1. In custody proceedings, the parent therefore should have the right to be heard, an essential requisite of due process. *See Goldberg v. Kelly,* 397 U.S. 254, 267 (1970); *Grannis v. Ordean,* 234 U.S. 385, 394 (1914). This right includes the right to call and cross-examine witnesses, to be informed of all adverse evidence, and to challenge such evidence. *See Goldberg v. Kelly,* 397 U.S. at 267–68. Of course, due process should be more flexible when the dispute is between persons such as a child's parents.

■■ In the instant case, the secrecy surrounding the guardian ad litem's report deprived the plaintiff of her right to challenge its contents. While the disclosure of the contents to the plaintiff's counsel might normally rectify the situation, counsel here was precluded at trial from attacking the contents of the report. Although we recognize that confidentiality brings anonymity to individuals who might otherwise be reluctant to provide information to a guardian ad litem, we find that the parental interest in disclosure outweighs the need for anonymity. Guardians, of course, may choose to leave out certain names of individuals who seek anonymity because of familial or other close ties that might inhibit candor. The judge or master should determine when, and under what conditions, such names would be disclosed to counsel and/or

the parties. *See MacNeil v. MacNeil,* 119 N.H. 952, 409 A.2d 1341 (1979). As a result, we hold that the trial court erred both in making the guardian's report unavailable to the parties and in preventing counsel from challenging its contents at trial. *Accord, Greco v. Greco,* 73 Wis. 2d 220, 231, 243 N.W.2d 465, 471 (1976).

■■ On remand, the court should permit the parties to review the report. However, because the guardian ad litem serves as an attorney for his ward, the attorney-client evidentiary privilege will apply to all communications between the guardian and the child. *See Stevens v. Thurston,* 112 N.H. 118, 118, 289 A.2d 398, 399 (1972). *See generally,* McNamara, *The Hierarchy of Evidentiary Privilege in New Hampshire,* 20 N.H.B.J. 1, 2–5 (1978); CODE OF PROFESSIONAL RESPONSIBILITY Canon 4, EC 4-1 to -6, DR 4-101. References in the report to these communications should remain confidential, and in a separate section of the report. The court should determine the circumstances under which it will be made available to the parties. In contrast to our finding that the need for anonymity of third persons is subordinate to parental interests, we hold that the child's interest in confidentiality is predominant.

■■ We next address the plaintiff's contention that the guardian ad litem erred in interviewing Sherri without the aid of counsel and in the presence of the defendant. Although we certainly encourage guardians to conduct such interviews fairly, we find that neither the State nor the Federal constitution mandates any specific procedures. In this area, due process requires only that a parent have an opportunity to challenge the guardian ad litem's investigatory methods. *See Goldberg v. Kelly,* 397 U.S. at 267–68. The requirements of due process were satisfied in the instant case because the trial court permitted the plaintiff to question the guardian with respect to his investigatory techniques. The validity and reliability of the guardian's methods were questions of fact for the master. Furthermore, the master's implicit acceptance of the guardian's methods was not unreasonable because the record shows that the guardian interviewed Sherri on numerous occasions outside the presence of her father. If all interviews were in the presence of an attorney and a parent the child would hardly be in a position to confide in the interviewer.

■ Beyond the due process context, the plaintiff claims that the guardian's report contained improper references to religious factors and that the trial court erred in refusing to strike the report. We reject this argument. Although the report referred to religious considerations, it was not constitutionally repugnant, because it refrained from evaluating the merits of differing religious beliefs.

*See Dean v. Dean*, 32 N.C. App. 482, 483–84, 232 S.E.2d 470, 471–72 (1977); Annot., 66 A.L.R.2d 1410, 1413–14 (1959). The religious references related solely to the concerns and temporal welfare of Sherri and, as such, were proper subjects of inquiry. *See Allison v. Ovens*, 4 Ariz. App. 496, 502, 421 P.2d 929, 935 (1966), *cert. denied*, 390 U.S. 988 (1968); *T. v. H.*, 102 N.J. Super. 38, 40, 245 A.2d 221, 222 (Ch. Div. 1968), *aff'd*, 110 N.J. Super. 8, 264 A.2d 244 (App. Div. 1970); *see also Del Pozzo v. Del Pozzo*, 113 N.H. 436, 437, 309 A.2d 151, 153 (1973). In any event, the trial court was not bound to accept the disputed statements.

The plaintiff also contends that the evidence did not support the trial court's decision to award physical custody of Sherri to the defendant father. Because we have held that the plaintiff was denied her right to challenge the contents of the guardian's report, we will not consider the report's contents in evaluating the sufficiency of the evidence at this time.

 The testimony at trial revealed that Sherri was a mature teenager and that she had expressed a strong preference to live with her father. The testimony further indicated that the defendant was qualified and capable of providing for his daughter. Thus, even while excluding the guardian ad litem's report from consideration, we cannot say that the trial court acted unreasonably or abused its discretion in placing physical custody of Sherri with the defendant. *See Doe v. Doe*, 119 N.H. 773, 776, 408 A.2d 785, 787 (1979); *Starkeson v. Starkeson*, 119 N.H. 78, 80–81, 397 A.2d 1043, 1045 (1979). At age 14, Sherri's preference is usually going to be crucial. *See* RSA 463:14. Although we remand in order to permit the plaintiff to review and challenge the unprivileged portions of the guardian's report, we urge the parties, in contemplating any potential appeals, to remain cognizant of the evidentiary holding in this decision.

*Affirmed in part; reversed in part; remanded.*

All concurred.