Rockingham
No. 81-193
Laconia District Court
No. 81-252

STATE OF NEW HAMPSHIRE

v.

MICHAEL CORNELIUS

STATE OF NEW HAMPSHIRE

v.

JEFFREY ALLEN JONES

October 20, 1982

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief and orally), for the State.

*Perkins, Phillips & Waters P.A.*, of Concord (*Roger B. Phillips* on the brief and orally), for the defendant Cornelius.

*Stephen R. Fine & Associates P.A.*, of Manchester (*Charles A. Meade* on the brief and orally), for the defendant Jones.

BROCK, J. The principal issue in these consolidated appeals is whether the defendants' constitutional rights were violated due to the State's failure, while administering a breathalyzer test, to take an additional breath sample for their independent testing. We hold that neither the due process nor the equal protection doctrine requires that a defendant be provided with an additional breath sample so that an independent test may be performed by his own experts.

In the first of these cases, the defendant Cornelius was arrested in Epping at approximately 2:45 a.m., on November 16, 1980, and was charged with a first-time offense of operating while under the influence of intoxicating liquor, a violation. RSA 262-A:62 (current version at RSA 265:82 I). The breathalyzer test administered to him indicated a blood-alcohol level of .21 percent. Cornelius' pretrial motion to suppress the test results was denied by the Superior Court (*Temple*, J.). The trial judge found Cornelius guilty, stating, however, that had the breathalyzer test result been suppressed, a reasonable doubt as to Cornelius' guilt would have existed. The defendant appealed.

In the second case, the defendant Jones was arrested in Tilton at approximately 2:00 a.m., on March 9, 1980, and charged with the same violation. A breathalyzer test administered to him showed a blood alcohol content of .20 percent. Jones' motion in advance of trial to suppress the admission of the test result, because the State had failed to preserve an additional breath sample for his own analysis, was transferred without ruling to this court by the Laconia District Court (*Huot*, J.).

Both breathalyzer tests were performed on Smith & Wesson Model 900 A instruments, which are currently in use throughout New Hampshire. The instrument measures blood-alcohol content by

analyzing a known quantity of deep lung—alveolar—air. (For a more complete description of the test methodology, see *State v. Baker*, 56 Wash. 2d 846, 851–52, 355 P.2d 806, 809 (1960)). The test ampoule is destroyed in the course of the test.

██ Recently, in *State v. Shutt*, 116 N.H. 495, 363 A.2d 406 (1976), this court rejected the argument that when the State elects to administer a breath test under RSA 262-A:69-a (current version at RSA 265:84), the provisions of RSA 269-A:69-b (current version at RSA 265:86) impose a duty on the State to perform an additional test for the defendant's personal use. The court also held that the procedures provided for in RSA 269-A:69-b (current version at RSA 265:86), and those used by the State in the statute's implementation, did not violate due process. *State v. Shutt*, 116 N.H. at 496–97, 363 A.2d at 407–08. We find no merit to the additional argument made by the defendants in these cases that equal protection considerations compel a different result, and we conclude that because RSA 262-A:69-b (current version at RSA 265:86) permits a defendant to have an additional test performed by a person of his choosing, the provisions of RSA 262-A:69-a and -b (current versions at RSA 265:84 and :86) do not violate due process. *State v. Shutt*, 116 N.H. at 497, 363 A.2d at 408. Although the defendants suggest that this right is illusory due to the practical difficulties of making timely arrangements for such tests, the record in these cases fails to support such a finding.

██ The evidence before us indicates that since *Shutt* was decided, advances in technology have occurred, making it possible for the State, at reasonable expense, to take and preserve an additional breath sample or its functional equivalent for the defendant's later use, and for information of some value to be obtained from "used" ampoules. We are not prepared, however, to conclude that a statute and the procedures employed in its implementation, which passed constitutional muster in 1976, have because of these technological advances become constitutionally infirm in 1982. It is sufficient to emphasize that as technological advances occur, the use of which by law enforcement authorities will better enable the State to make more meaningful and real the rights guaranteed citizens under our constitutions, the dictates of basic fairness may require that the State avail itself of such technology. Accordingly, our order is

*No. 81-193, appeal dismissed;*
*No. 81-252, remanded.*

BOIS, J., concurred; DOUGLAS, J., concurred specially; BATCHELDER, J., dissented, with whom KING, C.J., concurred.

DOUGLAS, J., concurring specially: I concur specially in the result reached by my Brothers Brock and Bois. I am not prepared to overrule *Shutt* at this time, although the concern over the use or potential abuse of breathalyzer evidence implied in the opinion of the dissenters is not without merit. I would overrule *Shutt* *prospectively*, however, as of February 1, 1983, because of the State's good-faith reliance on it in the past in the important task of highway safety.

Due process under part I, article 15 of the New Hampshire Constitution is a flexible standard as are the remedies available to effectuate relief consistent with it. *See Provencal v. Provencal*, 122 N.H. 793, 797, 451 A.2d 374, 377 (1982); *Wheeler v. State*, 115 N.H. 347, 352, 341 A.2d 777, 781 (1975), *cert. denied*, 423 U.S. 1075 (1976); *Lassiter v. Department of Social Services*, 452 U.S. 18, 24–25 (1981); *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970); *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). The State has, of course, relied on *Shutt* in the past as a proper pronouncement by this court, and I see no reason to fault the State government for buying machines that we held unanimously just six years ago were in accord with due process protections. *See Stovall v. Denno*, 388 U.S. 293, 297 (1967); *Johnson v. New Jersey*, 384 U.S. 719, 727 (1966).

This court has previously held that opinions will sometimes be applied only prospectively "whenever it has thought justice to be better served by doing so." *Alexander v. Orford School Dist.*, 117 N.H. 641, 644, 377 A.2d 127, 130 (1977); *see Madbury v. Durham*, 108 N.H. 474, 467–80, 240 A.2d 760, 763–64 (1968). Recently, the United States Supreme Court was faced with the dilemma of what to do if it found—as it did—that the Bankruptcy Reform Act of 1978 gave bankruptcy judges too much jurisdiction in violation of article III of the United States Constitution. Utilizing the three-prong test of *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), the Court said:

> "It is plain that Congress' broad grant of judicial power to non-Art. III bankruptcy judges presents an unprecedented question of interpretation of Art. III. It is equally plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts. We hold, therefore, that our decision today shall apply only prospectively.

"The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws."

*Northern Pipeline Const. v. Marathon Pipe Line Co.*, 102 S. Ct. 2858, 2880 (1982) (plurality opinion) (footnote and parallel citations omitted).

The Court on occasion has applied a new constitutional rule of criminal procedure prospectively, "denying the benefit of the new rule even to the parties before the Court." *United States v. Johnson*, 102 S. Ct. 2579, 2584 (1982) (citing *Morrissey v. Brewer*, 408 U.S. 471, 490 (1967), and *Johnson v. New Jersey*, 384 U.S. 719, 733 (1966)). The Court, summarizing the history of its own application of the prospectivity/retroactivity distinction, observed that prospective enforcement of the newly announced rule seemed proper when the rule was "unanticipated." *United States v. Johnson*, 102 S. Ct. at 2587. Once the Court found the new rule was unexpected, "reliance by law enforcement authorities on the old standard and [the] effect on the administration of justice of a retroactive application of the new rule . . . have virtually compelled a finding of [prospectivity]." *Id.* (Citations omitted.)

Thus, for any persons charged with the offense of driving while under the influence arising out of facts occurring on or after February 1, 1983, I would require that a second breath sample or its functional equivalent should be available.

BATCHELDER, J., dissenting, with whom KING, C.J., concurs: When the breathalyzer law was passed by the 1965 legislature and interpreted by this court in *State v. Shutt*, 116 N.H. 495, 363 A.2d 406 (1976), the technology did not exist for the taking and preservation of an additional breath test at reasonable cost. RSA 265:86, however, requires in instances where the test involves blood or urine that second samples be retained. Furthermore, the State in these cases *has agreed* that a second sample of breath or its functional equivalent may now be preserved at reasonable costs. The decision as to which of the three bodily substances will be examined is vested solely in the law enforcement authorities, as it should be. Nevertheless, when the law enforcement agency chooses the breath test it chooses the evidentiary technique that is solely and completely in the control of the prosecution despite the fact that other courses permitting independent analysis by the defendants are available. Consequently, this policy undermines the integrity of

the fact-finding process; therefore, the due process questions presented by these defendants are of constitutional dimensions.

The fact that samples of breath, or their functional equivalent, may be preserved at a reasonable cost for testing by defendants has been recognized and has resulted in changes in the law in the States of Colorado and Arizona by court decision, *see Baca v. Smith*, 124 Ariz. 353, 356–57, 604 P.2d 617, 620–21 (1979); *Garcia v. Dist. Ct.*, 197 Colo. 38, 47, 589 P.2d 924, 930 (1979), while our neighboring State of Vermont has by statute required the preservation of an additional sample. VT. STAT. ANN. tit. 23, § 1203(a) (Supp. 1982).

In these appeals, the defendants have unsuccessfully promoted the recognition of a constitutional right. Although the majority of this court has failed to acknowledge the existence of a constitutional deficiency today, nevertheless, they concede that technological advances since the *Shutt* case have occurred and recognize that "dictates of basic fairness may require that the State avail itself of such technology." The result is ironic; these defendants, who have precipitated the court's recognition of a serious potential deficiency in the manner in which breathalyzer tests are administered, have nothing to show for their effort. Because I believe that the lack of a second breath sample violates constitutional notions of due process, I would hold that this new requirement applies to all cases pending at the time of the finding, as well as to the defendants.

In concurring specially, my Brother Douglas states that he "would overrule *Shutt prospectively*" as of February 1, 1983. This implies that he is prepared to deny rights asserted by litigants before the court and afford such rights to nameless litigants not yet before the court.

The overwhelming body of law in this country, including much of the authority cited by my Brother Douglas, stands for the proposition that when a new constitutional rule affecting the fact-finding process is announced, it is to be applied prospectively and not retrospectively, *i.e.*, to those defendants at bar and to any cases which have not been finally adjudicated. *United States v. Johnson*, 102 S. Ct. 2579, 2584–85 (1982) (citations omitted). Moreover, where the new constitutional rule overcomes an aspect of a criminal trial that substantially impairs the truth-finding function so as to raise serious questions about the accuracy of past guilty verdicts, the new rule is given complete retroactive effect. *Id.* at 2584.

Refusing to let litigants reap the benefit of their legal harvest is disfavored even in civil cases. *Merrill v. Manchester*, 114 N.H. 722, 730–31, 332 A.2d 378, 384 (1974). This court has routinely afforded criminal defendants this benefit. *See, e.g., State v. Goddard*, 122 N.H. 471, 446 A.2d 456 (1982) (arson and burglary); *State v. Staples*,

120 N.H. 278, 415 A.2d 320 (1980) (rape); *State v. Aubert*, 120 N.H. 634, 421 A.2d 124 (1980) (murder). The United States Supreme Court does not deprive successful litigants in criminal cases of the benefit of their appeals. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 301 (1967) (where the court declined to apply *United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263 (1967), retrospectively); *Morrissey v. Brewer*, 408 U.S. 471, 490 (1972) (where the new rule applied to future revocations and Morrissey's and Booher's cases were remanded to determine whether the parole revocation procedures afforded were consistent with the standards set forth by the Court). Civil cases are inapposite and are governed by a different standard. *United States v. Johnson*, 102 S. Ct. at 2586 n.12.

To acknowledge that there is a constitutional infirmity, but postpone its recognition until a specified future date, is to embark upon a dangerous course of judicial legislation and substantially to dilute judicial accountability. Were this approach to appellate review to be adopted, counsel in every case will be called upon to brief and argue the effective date of any new doctrine in addition to the underlying substantive constitutional questions.