Request of the House
No. 2010-166

OPINION OF THE JUSTICES
(Eliminating Requirement for Additional Breath Test Samples)

Submitted: April 5, 2010
Opinion Issued: April 27, 2010

The New Hampshire House of Representatives adopted the following resolution on March 11, 2010, and filed it with the supreme court on March 15, 2010:

"Whereas, there is pending in the House, House Bill 1146, 'An Act eliminating requirements for additional breath tests for blood alcohol content'; and

"Whereas, HB 1146 eliminates the requirement that samples of breath of a DWI suspect be sufficient to allow an additional test for each breath sample taken and the captured sample or sample be given to the suspect for his or her own independent analysis; and

"Whereas, HB 1146 has been introduced and is presently pending before the House; and

"Whereas, certain questions have arisen concerning the constitutionality of HB 1146; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

"(1) Does HB 1146 violate the due process clause of either the United States constitution or the New Hampshire constitution?

"(2) Does HB 1146 violate any other provisions of the United States constitution or the New Hampshire constitution?"

*To the Honorable House of Representatives*:

The undersigned justices of the Supreme Court, reaching differing conclusions, return the following separate replies to the questions presented in your resolution.

### OPINION OF CHIEF JUSTICE BRODERICK AND JUSTICES DUGGAN AND CONBOY

House Bill (HB) 1146 proposes to amend RSA 265-A:7 (Supp. 2009) and RSA 265-A:8 (Supp. 2009) to eliminate the requirement that a second sample of breath taken pursuant to RSA 265-A:4 (Supp. 2009) be collected or preserved. RSA 265-A:4-:16 (Supp. 2009) comprise the statutory scheme relating to the implied consent of motor vehicle drivers to submit to blood alcohol testing. Pursuant to RSA 265-A:7, I, when the police extract a sample of blood from a person arrested for driving under the influence of alcohol for the purpose of performing a chemical test to determine blood alcohol content, the police must extract a sufficient quantity of blood to allow two tests to be conducted. Additionally, the testing laboratory must retain for thirty days "a quantity of said sample sufficient for another test, which quantity shall be made available to the [arrested person] or his or her counsel upon request." RSA 265-A:7, I. Under RSA 265-A:7, II, when the police capture the arrested person's breath, the sample must be "sufficient to allow an equivalent additional test" to be conducted. RSA 265-A:8, I(a) mandates that the person be informed of his or her right to "a similar test or tests made by a person of his or her own choosing." If law enforcement fails to comply with the prerequisites to tests set forth in RSA 265-A:8, the test administered at law enforcement's direction is inadmissible. RSA 265-A:8, III.

As amended by HB 1146, RSA 265-A:8, I(a) would give the arrested person the right to have additional blood or urine tests by a person of his or her own choosing, instead of the right to have "similar test or tests"

conducted. Additionally, as amended by HB 1146, RSA 265-A:7, II would no longer require that a second sample of the arrested person's breath be collected or preserved, but would mandate that the person "be given a reasonable opportunity to arrange for an alternative chemical test." HB 1146 would leave the remaining requirements of RSA 265-A:7 and RSA 265-A:8 unchanged.

We have been asked to opine upon two questions. First, whether enactment of HB 1146 would violate the Due Process Clause of the Federal or State Constitution, and second, whether enactment of HB 1146 would "violate any other provisions" of the Federal or State Constitution. Historically, we have declined to answer general inquiries on constitutional infirmity and, in keeping with that practice, we respectfully decline to answer the second question. *See Opinion of the Justices (Weirs Beach)*, 134 N.H. 711, 717 (1991). We turn, therefore, to the first question.

We first address this question under the State Constitution, citing federal opinions only for guidance. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). In assessing a defendant's due process claim under the State Constitution, we look to the principles of fundamental fairness. *State v. Hearns*, 151 N.H. 226, 238 (2004); *see* N.H. CONST., pt. I, art. 15. "[T]his standard of fairness . . . require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Towards this end, due process "imposes a duty on the State to preserve evidence at least in those circumstances where its exculpatory value is apparent and comparable evidence is unavailable." *Opinion of the Justices*, 131 N.H. 583, 596 (1989) (opinion of Johnson, J.); *see Trombetta*, 467 U.S. at 489.

In *State v. Cornelius*, 122 N.H. 925, 928-31 (1982), a majority of the court (King, C.J., and Batchelder and Douglas, JJ.) ruled that when the police choose to administer a breath test, it is unconstitutional for the State not to take and preserve a second breath sample. The primary rationale for the majority's ruling "was that due process was violated because the police were able to control a defendant's access to a second sample through their unbridled discretion in selecting the type of test to be administered." *Opinion of the Justices*, 131 N.H. at 592 (opinion of Souter and Thayer, JJ.); *see State v. Martin*, 125 N.H. 672, 676 (1984). By choosing the breath test, the police could choose the "evidentiary technique that [was] solely and completely in control of the prosecution despite the fact that other courses permitting independent analysis by the defendants [were] avail- able." *Cornelius*, 122 N.H. at 929 (Batchelder, J., and King, C.J., dissent- ing). The ability of the police to do this "undermine[d] the integrity of the

fact-finding process" and, therefore, resulted in a process that was fundamentally unfair and violative of due process. *Id.* at 929-30 (Batchelder, J., and King, C.J., dissenting).

The statutory scheme, as amended by HB 1146, would be similar to that which existed when *Cornelius* was decided, and, therefore, raises the same constitutional concerns that the *Cornelius* majority identified. When *Cornelius* was decided, the statutory scheme required the State to take and preserve a second blood sample, but did not require the State to take and preserve a second breath sample. *See* RSA 265:86 (1982) (repealed 2006). Specifically, RSA 265:86 then in effect provided that any person to whom RSA 265:84 (1982) (repealed 2006) applied had the right "at his own expense to have a similar test or tests made by any person of his own choosing"; however, the statute required that only blood and urine samples "be of sufficient quantity to allow 2 tests" and that the testing laboratory keep such samples for another test for thirty days. Similarly, the statutory scheme as amended by HB 1146 gives the arrested person the right to have "additional blood or urine tests" by a person of his or her own choosing and no longer requires that a second sample of the arrested person's breath be collected or preserved.

The State argues that *Cornelius* should be overruled because, since it was decided, "facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." *Alonzi v. Northeast Generation Servs. Co.*, 156 N.H. 656, 660 (2008) (quotation omitted). Specifically, the State notes that the State now uses much improved technology to measure blood alcohol content. The State contends;

> [U]nlike the breath analyses that were being performed when this Court previously addressed the issue of due process and the availability of separate breath samples, the current procedure involves the analysis of two separate breath samples by the testing instrument (called "replicate testing"), as well as internal and external tests of the instrument itself. Unless all of the internal accuracy criteria are met, the instrument will not provide a reported value. The replicate testing and built-in safeguards in the instrument itself make having the additional sample superfluous in protecting a [driving while intoxicated] defendant's right to due process.

Additionally, the State observes, the department of safety has promulgated new rules to ensure the "continued accuracy and reliability" of the technology now used to capture breath samples, as well as rules pertaining to instrument operators. Moreover, the State argues that after *Cornelius* was decided, New Hampshire became the only state that requires preser-

vation of a second breath sample. Because only one state requires this, according to the State, only one manufacturer makes the instrument that captures and preserves a breath sample, and only one company makes the silica gel tubes used for capturing samples.

The State also asserts that the second breath sample requirement has prevented New Hampshire "from staying current with emerging technology," such as models that test each of a subject's breath samples with two different technologies. For all of these reasons, the State contends that requiring the capture and preservation of a suspect's breath sample for independent testing is no longer required by due process. *See Moss v. Superior Court*, 857 P.2d 400, 404-05 (Ariz. Ct. App. 1993) (holding that because of the reliability and accuracy of the model used by the State to test breath samples, neither due process nor fundamental fairness required the State to provide defendants with breath samples), *review denied*, 868 P.2d 318 (Ariz. 1994).

We are not persuaded that either technological advances or increased administrative oversight of the breath testing process have robbed *Cornelius* "of significant application or justification." *Alonzi*, 156 N.H. at 660 (quotation omitted). "The ultimate *Cornelius* holding advanced two primary reasons why due process requires preservation of a second sample of breath in light of the statutory requirement of preserving a second blood or urine sample." *Opinion of the Justices*, 131 N.H. at 587 (opinion of Brock, C.J., and Batchelder, J.). First, "the technology existed for taking such a sample and the cost of it was reasonable," and second, "the prosecution, by choosing to take a breath sample . . . , could opt for the only evidentiary technique solely and completely in its control despite the statute's requirement that the State preserve second samples of blood or urine when police chose to administer either of those tests." *Id.* at 587-88 (opinion of Brock, C.J., and Batchelder, J.). These reasons are as compelling now as they were when *Cornelius* was decided.

As when *Cornelius* was issued, the technology still exists for taking and preserving a second breath sample. The State has not contended that the cost is unreasonable. Further, the statutory scheme, as amended by HB 1146, like the scheme at issue in *Cornelius*, vests the police with the sole discretion to choose which of the three bodily substances will be examined. *See Cornelius*, 122 N.H. at 929 (Batchelder, J., and King, C.J., dissenting). As in *Cornelius*, "[t]he State's discretion in choosing the only test method which [does] not require a second sample undermine[s] the integrity of the fact-finding process," and renders that process fundamentally unfair. *Opinion of the Justices*, 131 N.H. at 588 (opinion of Brock, C.J., and

Batchelder, J.). Accordingly, we believe that the statutory scheme, as amended by HB 1146, suffers from the same constitutional infirmities as the scheme at issue in *Cornelius*.

The State further contends that "even with the proposed elimination of the captured sample, . . . New Hampshire law would still require that an arrestee be given a reasonable opportunity to have a test of his or her blood or urine taken for independent testing." We are not persuaded that the right to an independent test of one's blood or urine diminishes the unconstitutionality of HB 1146. *See id.* (opinion of Brock, C.J., and Batchelder, J.). In *Opinion of the Justices*, two justices observed that suspects "face numerous practical difficulties" in obtaining an independent test. *Id.* at 587 (opinion of Brock, C.J., and Batchelder, J.). "While in police custody, the suspect [has] . . . to locate an available, licensed technician capable of promptly performing a second test, no matter what time of day or night." *Id.* (opinion of Brock, C.J., and Batchelder, J.). HB 1146 does nothing to alleviate these concerns. Given the current statutory scheme, we fear that the right of a suspect to have timely independent testing of his blood or urine is merely illusory. *But see* Vermont Stat. Ann. tit. 23, §§ 1203 (Supp. 2009), 1203a (2007) (requiring law enforcement to make arrangements for independent blood draw and state agency to maintain sample, and allowing medical facilities to be reimbursed for cost of blood draw).

 While we recognize that technological advances may well obviate the need to capture and preserve a second breath sample, we note that no legislative findings have been rendered in that regard. Moreover, in light of the apparent absence of realistic access to additional testing, we are reluctant to conclude that the proposed breath testing is substantially without risk of error. Thus, "[w]e are of the opinion that the dictates of basic fairness require the employment of the technology currently in place which preserves second samples of breath, blood, and urine." *Opinion of the Justices*, 131 N.H. at 588 (opinion of Brock, C.J., and Batchelder, J.). For all of the above reasons, therefore, we conclude HB 1146, which would eliminate the requirement that a second breath sample be preserved, violates the Due Process Clause of the State Constitution.

Because we find HB 1146 unconstitutional under the State Constitution, we need not address in detail whether it violates the Due Process Clause of the Federal Constitution. We observe, however, that the United States Supreme Court in *Trombetta*, 467 U.S. at 488-91, upheld the constitutionality of a statute that did not require that a second breath sample be preserved. Based upon this precedent, likely HB 1146 would pass muster under the Due Process Clause of the Federal Constitution. We decline,

however, to adopt the reasoning of the United States Supreme Court in *Trombetta* when interpreting the Due Process Clause of the State Constitution.

We therefore answer question one in the affirmative as it pertains to the State Constitution and respectfully decline to answer question one as it pertains to the Federal Constitution and question two.

> JOHN T. BRODERICK, JR.
> JAMES E. DUGGAN
> CAROL ANN CONBOY

## OPINION OF JUSTICES DALIANIS AND HICKS

Under the current statutory scheme, when the police capture the breath of a person arrested for driving under the influence for the purpose of testing it for blood alcohol content, the sample must be "sufficient to allow an equivalent additional test" to be conducted, RSA 265-A:7, II (Supp. 2009), and the person must be informed of his or her right to "a similar test or tests made by a person of his or her own choosing," RSA 265-A:8, I(a). House Bill (HB) 1146 proposes to eliminate the requirement that the breath sample be sufficient to allow for an equivalent additional test to be conducted. HB 1146 also proposes to eliminate the requirement that the person be informed of his or her right to have a "similar test" conducted. Under HB 1146, a person arrested for driving under the influence would have the right only to have "additional blood or urine tests" conducted by a person of his or her own choosing and the "reasonable opportunity to arrange for an alternative chemical test." Pursuant to HB 1146, the law will no longer require that a second sample of the person's breath be collected or preserved.

Question (1) asks whether HB 1146 would violate the Due Process Clause of the State or Federal Constitution. For the reasons that follow, we answer question (1) in the negative. Like our colleagues, we respectfully decline to answer question (2). *See Opinion of the Justices (Weir Beach)*, 134 N.H. 711, 717 (1991).

We begin by addressing question (1) under the State Constitution, citing federal opinions for guidance. *See State v. Ball*, 124 N.H. 226, 231-33 (1982). We agree with our colleagues, for the reasons they propound, that the statutory scheme, as amended by HB 1146, would be similar to that which existed when the court decided *State v. Cornelius*, 122 N.H. 925 (1982), and, therefore, raises the same constitutional concerns as the majority in that case identified. Unlike our colleagues, however, we are persuaded by the

State's argument that technological advances have robbed *Cornelius* "of significant application or justification." *Alonzi v. Northeast Generation Servs. Co.*, 156 N.H. 656, 660 (2008) (quotation omitted). We agree with the State that given these technological advances, the Due Process Clause of the State Constitution no longer requires the capture and preservation of a suspect's breath sample for independent testing. Accordingly, we believe that *Cornelius* is no longer good law. *See id.*

In reaching this conclusion, we find Arizona law instructive. Arizona, like New Hampshire, used to require the capture and preservation of a suspect's breath for independent analysis. *See Baca v. Smith*, 604 P.2d 617, 620 (Ariz. 1979). As breath-testing technology has advanced, Arizona courts have modified due process requirements. *Mack v. Cruikshank*, 2 P.3d 100, 104-05 (Ariz. Ct. App. 1999) (citing cases), *review denied* (Ariz. 2000). While in *Baca*, 604 P.2d at 620, the Arizona Supreme Court ruled that due process required the state to take and preserve a second sample when the test sample is destroyed, later Arizona court decisions have ruled that due process is satisfied as long as the second sample is "reasonably reliable," *State v. Harrison*, 755 P.2d 1172, 1174 (Ariz. Ct. App.), *review denied* (Ariz. 1988), *and disapproved of on other grounds by State v. Velasco*, 799 P.2d 821 (Ariz. 1990), and that no second sample is required when the suspect is offered a choice between a replicate breath test with no preserved sample and a blood test at state expense with a preserved blood sample, *State ex rel. Dean v. City Court*, 789 P.2d 180, 184 (Ariz. 1990).

In 1993, in response to a statutory amendment, the Arizona Court of Appeals ruled that because of the reliability and accuracy of replicate testing by an Intoxilyzer 5000, which is the predecessor to the model used in New Hampshire, due process and fundamental fairness no longer required the state to capture and preserve a second breath sample. *Moss v. Superior Court*, 857 P.2d 400, 404-05 (Ariz. Ct. App. 1993), *review denied*, 868 P.2d 318 (Ariz. 1994). The *Moss* court observed that "[a]s the technological development of the testing equipment used increases in sophistication and, concomitantly, in reliability — from . . . the GCI Mark IV Intoximeter used in *Baca* to the Intoxilyzer 5000 used in *Dean* . . . — the demonstrable value of an extra breath sample as the unique means of impeaching test results correspondingly wanes in inverse proportion." *Id.* at 404. Unlike prior instruments for testing the blood alcohol content of a suspect's breath, "[t]he Intoxilyzer 5000 is a very accurate and reliable testing method with built-in safeguards." *Id.* at 405. It is even "more accurate than the independent test methods used to analyze the silica gel sample or secondary sample." *Id.* Given the sophisticated technology of the Intoxilyzer 5000 and the replicate testing procedures, the court opined that it was extremely unlikely that preserved samples would be exculpatory. *Id.*;

*see California v. Trombetta*, 467 U.S. 479, 489 (1984). The court ruled that given the accuracy and reliability of the Intoxilyzer 5000, secondary breath samples "no longer add anything meaningful to the opportunity to present a defense," and are no longer required by due process. *Moss*, 857 P.2d at 405 (quotation omitted); *see Trombetta*, 467 U.S. at 485.

Like the *Moss* court, we too believe, based upon the evidence submitted to the legislature, that given the accuracy and reliability of the current technology used to analyze the blood alcohol content of breath, secondary breath samples are no longer required by due process and fundamental fairness. Accordingly, we conclude that HB 1146, which eliminates the requirement that a second breath sample be captured or preserved, does not violate the Due Process Clause of the State Constitution. We reach the same result under the Federal Constitution. *See Trombetta*, 467 U.S. at 488-91.

LINDA STEWART DALIANIS
GARY E. HICKS

*Michael A. Delaney*, attorney general (*Diana E. Fenton*, assistant attorney general, on the memorandum), filed a memorandum on behalf of the State in support of negative answers to the questions presented.

*Lothstein Law Office, PLLC*, of Concord (*Theodore Lothstein* on the memorandum), and *Burns, Bryant, Cox, Rockefeller & Durkin, P.A.*, of Dover (*John Durkin* on the memorandum), and *Law Office of Mark Stevens*, of Salem (*Mark Stevens* on the memorandum), filed a memorandum on behalf of the New Hampshire Association of Criminal Defense Lawyers in support of affirmative answers to the questions presented.

*David M. Rothstein*, acting chief appellate defender, of Concord, & a., filed a memorandum on behalf of the New Hampshire Appellate Defender Program, in support of affirmative answers to the questions presented.

*Representative Stephen J. Shurtleff*, of Penacook, filed a memorandum on behalf of the Committee on Criminal Justice and Public Safety of the New Hampshire House of Representatives, in support of negative answers to the questions presented.