518

Request of House of Representatives,
No. 4582.

OPINION OF THE JUSTICES.

Submitted April 18, 1957.

Answer returned April 30, 1957.

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following answers to the questions contained in your resolution filed April 3, 1957, with reference to House Bill 187, entitled "An Act to redistrict the state into senatorial districts."

The first two questions relate to the interpretation of Article 26th, Part II, of the Constitution of New Hampshire which provides as follows: "[Art. 26th]. And that the state may be equally represented in the senate, the legislature shall, from time to time divide the state into twenty-four districts, as nearly equal as may be without dividing towns and unincorporated places; and in making this division, they shall govern themselves by the proportion of direct taxes paid by the said districts, and timely make known to the inhabitants of the state the limits of each district."

The first question seeks the "proper interpretation" to be given to Article 26th in making the division contemplated. The second question is directed specifically to "what taxes are to be considered and included as direct taxes" in so doing.

The phrase "direct taxes" was incorporated in Article 26th of the Constitution by amendment in 1792 (10 N. H. State Papers 145); and it is reasonably plain that by "direct taxes" was meant the taxes which the General Court was then authorized to levy by what is now Article 6th, Part II of the Constitution, namely: taxes "on polls and estates." 9 N. H. State Papers 904.

Prior to the amendment of 1792, Article 26th quoted above, was in substantially the same form as now, except that the words "public taxes" appeared where the words "direct taxes" are now used (9 N. H. State Papers 896, 904), and the number of districts was required to "never be more than ten, nor less than five." See Const. Pt. II, *Art.* 26th, note.

Amendments of Article 26th were twice submitted to the people by the Constitutional Convention of 1791. The first would have changed the number of districts to "thirteen," to be established according to the proportion of "public taxes" paid by the districts. See 10 N. H. State Papers 116, amendment No. 12. This proposal failed of ratification by the people, and a second amendment was submitted which would fix the number of districts at twelve and for the first time used the language "direct taxes paid." *Ib.,* 145, 153. This amendment was ratified in 1792. The Journal of the Convention does not disclose what prompted the change, since it was made in committee. See *Ib.,* 143. We are therefore left to a consideration of other sources to determine the significance of the change.

Both before and after the adoption of the amendment of 1792 rates and assessments for purposes of taxation were fixed from time to time by legislative act (5 N. H. Laws 603 (1791); 6 N. H. Laws 171 (1794) ), providing the manner in which "public taxes" should be assessed on "polls and rateable estates." See Robinson: History of Taxation in New Hampshire, *pp.* 86, 87; 5 N. H. Laws 429. Also from time to time, the Legislature determined the "proportion to every thousand pounds of the public taxes which every town . . . [should] annually pay." 5 N. H. Laws 420 (1789); 6 N. H. Laws 165 (1794). The latter acts were used to apportion the public taxes required to support the expenditures of state and counties. See 5 N. H. Laws 500 (1790). At least as early as 1803, one of the acts establishing rates and assessments was entitled "An act to Establish the Rates at which Polls and Rateable Estates Shall be Valued in Making and Assessing *Direct* Taxes," although the body of the act continued to refer to "public taxes." 7 N. H. Laws 187 (1803). (Italics supplied.)

Use of the word "direct" in the amendment of Article 26th may have been thought desirable because of the distinction made in the then recently adopted Constitution of the United States, between "direct taxes" on the one hand, and "duties, imposts, and excises" on the other. The Constitution of the United States had been

ratified by New Hampshire on June 21, 1788, and declared in effect in 1789.

Article 1, section 2, clause 3 of the Constitution of the United States provided that "Representatives and direct taxes shall be apportioned among the several States . . . "; and by Article 1, section 9, clause 4 it was provided: "No capitation, or other direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken." Duties, imposts and excises on the other hand were required to be uniform throughout the United States. Const., *Art. 1, s. 8, cl. 1.* In *Veazie Bank* v. *Fenno,* 8 Wall. (U. S.) 533 (1869), the United States Supreme Court was called upon to consider what were "direct taxes" as the term was used in the Constitution of the United States; and it was there said that "the words direct taxes . . . comprehended only capitation taxes, and taxes on land, and perhaps taxes on personal property by general valuation and assessment of the various descriptions possessed within the several States." *Ib.,* 546. See also, Cooley's Constitutional Limitations (7th *ed.*) 708-710.

Hence it is apparent that "direct taxes," at least in the sense in which the words were used in the Constitution of the United States, were the taxes which Part II of the Second Constitution of New Hampshire (1784), under the head of "The General Court" directed to be assessed "on polls and estates in the manner that has heretofore been practised" for the raising of the "public charges of government." 9 N. H. State Papers 904. *Cf.* Const. Pt. II, *Art.* 6th. It will be remembered that taxation "upon . . . other classes of property, including franchises and property when passing by will or inheritance," was not permitted by this article until it was amended in 1903. *Conner* v. *State,* 82 N. H. 126.

We conclude, in answer to your second question, that "direct taxes" as used in Article 26th, Part II of the Constitution means taxes upon polls and estates. In answer to your first question, we think it is evident that the establishment of senatorial districts in accordance with a proper interpretation of Article 26th requires that the districts be so established that the "direct taxes paid" by the towns and unincorporated places in any district shall be in the same proportion as those paid by the towns and unincorporated places of any other district, or as nearly so as is practicable, having regard to the prohibition against the division of towns and places.

Your third question raises the issue of whether there is any

constitutional violation in a redistricting based upon "equalized valuation figures supplied by the state tax commission and as provided under the provisions of RSA 76:1," (requiring a legislative apportionment of public taxes according to equalized valuation). We are of the opinion that no constitutional violation would result from the use of such a method.

Article 26th directs that in establishing senatorial districts the Legislature shall "govern themselves by the proportion of direct taxes paid by the said districts." Direct taxes as we have defined them furnished the means of raising the public charges of government as early as the Revolutionary years. See Upton: Revolutionary New Hampshire, *pp.* 133, 138. The state tax, also known as the "direct state tax" has for most of our history been a source of funds by which the obligations of the state have been met. The tax was divided among the towns of the state in the proportions established by the apportionment acts previously mentioned. And although a state tax has not been levied since 1938 (see RSA 76:3; Laws 1937, *c.* 189) because of the provisions of the tobacco tax law adopted in 1939 (Laws 1939, *c.* 180, *s.* 1, now RSA 78:20), apportionment statutes continue to be enacted (Laws 1955, *c.* 330) to determine among other matters the apportionment of county taxes. RSA 29:11.

Present-day apportionment statutes are based upon equalized valuations as determined by the Tax Commission (RSA 71:11 V); and the "direct taxes paid" (*Art.* 26th, *supra*) by the cities and towns within the senatorial districts are therefore necessarily in the proportion of their equalized valuations as determined by the Tax Commission.

The House Journal for January 30, 1957, referred to in your question indicates that valuations for the twenty-four senatorial districts as now constituted differ by as much as $91,000; while under the redistricting proposed by House Bill 187, the maximum variation in equalized valuations will not exceed $9,700 in round figures. The differentials which would result from the proposed redistricting are explainable by the necessity of avoiding the division of towns or places, and appear to present no constitutional objection. As previously stated, the third question is answered in the negative.

Your fourth and final question is whether House Bill 187 "violate[s] in any respect the Constitution of New Hampshire." In view of the generality of this question we do not deem it within

our province to speculate upon whether other constitutional issues might be raised. See *Opinion of the Justices*, 99 N. H. 525, 528; *Opinion of the Justices*, 84 N. H. 559, 564. However, the bill presents no constitutional defects upon its face.

FRANK R. KENISON,
LAURENCE I. DUNCAN,
AMOS N. BLANDIN, JR.,
EDWARD J. LAMPRON.

April 30, 1957.

Fred Kelley, as Chairman of the Committee on Redistricting Bill, for the bill.