Cheshire, ·
No. 5264.

STATE *v.* ERBIN REED.

Argued December 1, 1964.
Decided February 26, 1965.

*William Maynard*, Attorney General, and *George S. Pappagianis*, Deputy Attorney General (*Mr. Pappagianis* orally), for the State.

*Arthur Olson, Jr.* (by brief and orally), for the defendant.

BLANDIN, J. We are faced with the familiar but often difficult task of deciding whether the record supports the Trial Court's preliminary conclusion that the defendant's confession was voluntary. *State* v. *White*, 105 N. H. 159; *State* v. *George*, 93 N. H. 408, 415-416. In making our determination, we are mindful of the fact that the ultimate purpose of a criminal trial is to discover the truth. *State* v. *Nelson*, 105 N. H. 184, 191. Also, it is basic, in carrying out this purpose, that the constitutional rights of the accused, be he innocent or guilty, must be meticulously protected. It is equally vital that the individual rights of members of the public be safeguarded to the end that their lives and property shall not be jeopardized by the freeing of guilty persons. *Lopez* v. *United States*, 373 U. S. 427, 446; see also, *State* v. *Fay*, 333 F. 2d 12, 20 (2d Cir. 1954). To weight the scales in favor of either the accused or the public in accord with the prevailing temper of the times — as has too often been done — can lead neither to truth nor justice. In short, a sensible balance must be struck between the conflicting interests of the accused and the public. *Ker* v. *California*, 374 U. S. 23.

It is established law that in our examination of the record we are bound by the indisputable principle that conflicts in the testimony are for the triers of fact. *State* v. *LeNoir*, 97 N. H. 462. This does not mean that we can avoid our responsibility of passing on the total circumstances in each individual case to determine whether the finding of voluntariness of a confession is sustainable. Ultimately, it must always be for the appellate court to say whether there is evidence in the record from which reasonable persons could come to the conclusion which has been reached. *State* v. *Long*, 90 N. H. 103, 107.

Before considering, with the foregoing principles in mind, what the record discloses, it may be well to state the defendant's contentions as they appeared in his brief and in his oral argument. His first one is: "Did the court err in allowing the State to introduce the confession of September 8, 1963 into evidence on the basis of the voluntariness of the respondent?" His second and final question is: "Did the court err in allowing the confession into evidence in direct violation of the rights of the respondent under the Sixth Amendment to the Constitution of the United

States of America as made obligatory by the Fourteenth Amendment?"

In broad outline, the defendant asserts that the Court was in error on both occasions, as will more particularly appear, because of the circumstances surrounding the confession. While there are in some instances sharp conflicts between the testimony of the State's witnesses and that of the defendant, there was sufficient evidence to support the following:

The defendant was twenty years old at the time of the trial. He was nineteen when the offense of which he is accused was committed, which was on Thursday, September 5, 1963, and was then employed at a local factory. He had had previous experience with the police; also, he had been a member of the "Junior Police" in Brattleboro, Vermont. He was picked up without objection on his part on Saturday, September 7, 1963, at about a quarter of six in the afternoon, by a police cruiser, on a suspicion that he might have some information concerning, or be involved in, an aggravated assault and kidnapping of a two-year-old girl two days previously. It appeared that this child had been missing for some hours on the afternoon in question. When discovered, she was sobbing and hysterical. She seemed "terribly upset" and remained so for a considerable period thereafter. Her body bore imprints of a blanket or bedding similar to what was found in the defendant's room. There was a hand print on her body "like a good slap," and apparent "thumb marks" on her neck. The area of her vagina was red and there were other red marks on her bottom and the upper parts of her legs in front. In short, she bore unmistakable evidence of having been abused and, to a degree, sexually assaulted.

The defendant, after he was picked up, was taken to the local police station and questioned intermittently, but rather briefly, about irrelevant matters in the case. This sort of interrogation went on from about 6 o'clock until 8:30 P.M. From then until about 11:20, when he signed a statement, he was questioned about the assault and kidnapping. He was given coffee during the evening.

The statement which he gave denied the commission of any assault or kidnapping, but contained admissions that the little girl had gone up to his room with him voluntarily. Prior to and at the trial, the defendant claimed that this statement was false and that he made it all up because he thought that he

"would be blamed anyhow." He insisted in his statement that he did not molest her in any way and that she left after a few moments. This statement was introduced in evidence at the trial, not only without objection from defendant's counsel, but with his approval, and only after he himself had read it into the record before the jury and cross-examined the witnesses who took it.

The officer who conducted this interrogation testified that he informed the defendant of his rights to counsel, that any statement could be used against him, that he did not have to talk, and that no force or coercion was used. However, the Presiding Justice who heard this evidence without a jury, as a preliminary matter, disbelieved a portion, at least, of the officer's testimony and ruled that the statement was not voluntary.

The Court carefully and correctly instructed the jury that since this statement of September 7 was taken without proper warning to the defendant, with apparently no opportunity to consult counsel, and was signed upon the advice of the officer, it was improperly obtained and wholly inadmissible to show the defendant's guilt. He told them to consider it only as bearing upon the manner in which the defendant was interrogated and the attitude of the police toward him. He explained to the jury that the purpose was to help them decide whether a confession taken the next day, September 8, was actually brought about by the improper practices on September 7 and was therefore also involuntary and not to be considered by them. It is obvious that this instruction permitted, if it did not encourage, the jury to draw inferences detrimental to the police method of questioning and was helpful to the defendant. The instruction was sufficiently favorable to him.

After the statement of September 7 was signed by the defendant, he was allowed to go to bed about midnight and to rest and sleep, without being disturbed in any manner until approximately 10 o'clock the following morning, September 8, which was on a Sunday. At this time Officer Byrnes questioned him, and he was given coffee and doughnuts. The reason why Byrnes conducted this interrogation was because the defendant said he wished to talk to him. Before questioning the defendant, this officer advised him of his rights, including his right to remain silent and to consult counsel. He further told him that any statement he might make could be used against him. Officer Byrnes stated that throughout this interview no threats,

coercion or intimidation were practiced, and no inducements were given to the defendant. Prior to the questioning, Byrnes offered the defendant the use of a telephone to call counsel if he desired.

The defendant responded to the officer's remarks and offers by saying that he wished to talk to him, and he did not use the telephone. Neither then nor at any time prior to making his confession on September 8 did he ask to see any other person, nor was anything said or done to deny him this right. The conversation between him and Byrnes was conducted in a calm, friendly manner and, as previously stated, was free of improper pressures or inducements. After it was typed, the confession was carefully read to the defendant, who did not read or write to any substantial extent, and discussed with him.

Following this, at about noon on September 8, the defendant signed this confession, which was introduced in evidence. The jury again were fully and correctly instructed that they were not to consider this confession unless they believed that it had been voluntarily made and that all the defendant's rights had been protected. Here it may be well to note that the nature of the confession, including its details, was such that in spite of the fact that the defendant repudiated it before and at the trial, claiming that he made it all up as he did his September 7 statement, it might well have brought to the triers of fact the conviction that it spoke the truth.

In regard to the procedure leading up to its admission, the Trial Court followed the so-called "Humane Rule" (see Appendix A to opinion of Mr. Justice *Black, p.* 18, *Jackson* v. *Denno*, 378 U. S. 368; see also, *State* v. *Squires*, 48 N. H. 364, 369-370) by first hearing all the witnesses, including the defendant, without a jury. After making a preliminary finding that the confession was voluntary (*State* v. *Lavallee*, 104 N. H. 443), the Court then submitted it to the jury with correct instructions, as previously stated, that they must find it voluntary before they could consider it. The Court did not inform the jury of his finding, so that they were enabled to consider the matter in an entirely dispassionate manner. The defendant was thus surrounded with a double safeguard, in contrast to the situation existing in *Jackson* v. *Denno, supra.*

Among other claims, defendant's counsel argued vigorously that although the defendant had been found, upon thorough examination at the New Hampshire State Hospital, to be neither

insane nor a sexual psychopath, yet it had been determined that he possessed low intelligence and poor judgment. Because of this, as well as for other reasons, counsel asserts that the confession should not have been admitted. Assuming that the hospital diagnosis was correct, nevertheless the record evinces that throughout his interrogation by police and his direct examination and cross-examination in court, the defendant's answers might well have indicated to the jury a reasonable measure of alertness and an ability to protect himself. Whether or not the record presents a fair portrayal, it is axiomatic that the Trial Court and jury, who had an opportunity to observe and hear the defendant during the four days which the trial lasted, were in a better position to judge his capacity and evaluate his testimony and that of the other witnesses than an appellate court. Unquestionably, the defendant's lower intelligence was a factor for the jury to weigh. The Court so instructed them.

It is true that the fact that the confession of September 8, which the jury were allowed to pass upon, followed a prior inadmissible statement on September 7, was a circumstance for the jury to consider as to whether the effect of the improper methods used on September 7 continued on September 8. If the effect did continue, no finding of voluntariness could have been made. *Leyra* v. *Denno*, 347 U. S. 556; see also, Annot. 1 Law Ed. 2d 1735, 1750. However, as previously stated, the Court fully and correctly instructed the jury on this score in a manner sufficiently favorable to the defendant. Following these instructions, the jury, in order to reach its verdict, must have found that the September 8 confession was voluntary. As has been authoritatively held, each case must be decided upon its own peculiar circumstances. *Escobedo* v. *Illinois*, 378 U. S. 478.

We therefore hold that under all the facts and circumstances of this case the September 8 confession was not inadmissible because of the defendant's low mentality or any allegedly continuing effect of improper interrogation resulting in the September 7 statement. Nor can it be barred because of any allegedly wrongful practices used by the police or any alleged failure to warn the defendant of his rights. The Court was warranted in finding that the defendant was warned of his rights and that no improper practices produced this confession. It was therefore properly admitted, and the defendant's exception thereto is overruled.

The defendant finally urges us to rule his confession inadmis-

sible as in violation of his constitutional rights under the Sixth Amendment of the United States Constitution "as made obligatory by the Fourteenth Amendment" because he made it in the absence of counsel. *Escobedo* v. *Illinois*, 378 U. S. 478; *Massiah* v. *United States*, 377 U. S. 201. We believe that the present case is clearly distinguishable from either *Escobedo* or *Massiah*. Here the Trial Court, as a preliminary matter, found upon sufficient evidence that the defendant was offered counsel, refused such and then voluntarily confessed to an officer. We believe that these findings and the verdict of the jury, under proper instructions with respect to the confession, are unassailable. *State* v. *Long*, 90 N. H. 103, 106.

In summary, we believe that the record supports the jury's verdict. *State* v. *George*, 93 N. H. 408, 415-416; *State* v. *White*, 105 N. H. 159.

No error appears in the trial, and the order is

*Exceptions overruled.*

DUNCAN, J., did not sit; the others concurred.