Request of the Senate
No. 89-061

OPINION OF THE JUSTICES

April 26, 1989

OPINION OF CHIEF JUSTICE BROCK AND JUSTICE BATCHELDER

Under the present statute, RSA 265:86 (Supp. 1988), when the police extract a sample of blood from a person arrested for driving under the influence of alcohol for the purpose of performing a chemical test to determine blood alcohol content, the police must extract a sufficient quantity of blood to provide a second sample for the person's independent analysis. By virtue of our decision in *State v. Cornelius*, 122 N.H. 925, 452 A.2d 464 (1982), the State must preserve a second sample of breath when a breath test is administered to determine the blood alcohol content of a person suspected of driving while intoxicated (DWI).

SB 144-FN would amend RSA 265:86 (Supp. 1988), *inter alia*, to eliminate the requirement that police take and preserve a second sample of blood. The proposed bill would leave unchanged the

provision giving DWI suspects the "right at [their] own expense to have similar tests made . . .," but would limit those who could conduct such a test at the suspect's request to technicians "who [are] qualified and competent to conduct the tests, as determined by the director of the division of public health services under RSA 265:85," rather than "any person of [the defendant's] choosing." The requirement that defendants shall be informed by the law enforcement officer of this right at the same time as they are requested to permit a test under the provisions of RSA 265:84 remains unchanged. The amendment, however, further provides that "[i]t shall not be a prerequisite to the admission of the state's test result that the state provide an arrested person with a sample of the blood, breath or urine which it has taken for testing purposes." SB 144-FN, section 1.

Question (1) asks whether SB 144-FN violates the due process requirements of either the State or the Federal Constitution. We begin by making an independent analysis of the protection afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions as guides. *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983).

We are of the opinion that SB 144-FN, which would abolish the current requirement to preserve a second sample of a DWI suspect's blood, and apparently attempts to eliminate the require-ment of preserving a second sample of a DWI suspect's breath as mandated by *State v. Cornelius*, 122 N.H. 925, 452 A.2d 464, would violate part I, article 15 of the New Hampshire Constitution by depriving DWI suspects of due process of law. We agree with the rationale in Justice Johnson's separate opinion to the extent that it finds a due process violation in the proposed amendment. We respectfully disagree with the opinion of Justices Thayer and Souter insofar as it states that the State Constitution does not require the police to retain a second sample of blood, breath, or urine taken from individuals suspected of driving while intoxicated.

■ The standard for determining whether a law or procedure violates due process is whether the law or procedure is fundamen-tally fair. *State v. Denney*, 130 N.H. 217, 220, 536 A.2d 1242, 1243 (1987); *State v. Martin*, 125 N.H. 672, 676, 484 A.2d 1176, 1179 (1984). Several reasons convince us that SB 144-FN is not fundamentally fair to DWI suspects to whom the test is adminis-tered under the implied consent law. As explained more fully below, these reasons include the lack of adequate alternative means by which the defendant could contest the State's sample, the ability

and reasonable cost of technology already in use to preserve second samples, our prior case law, and the legislative history of the implied consent law.

One reason we find that SB 144-FN would not be fundamentally fair is that, contrary to the reasoning in *California v. Trombetta*, 467 U.S. 479 (1984), we are unconvinced that an accused has adequate alternative means available to determine blood alcohol content at the time of the test. The Supreme Court in *Trombetta* relied on a defendant's ability to obtain evidence of improper calibration, operator error, and machine interference to hold that the due process clause of the fourteenth amendment did not require preservation of a second sample. *Id.* at 490. Such evidence, however, while certainly significant, is not likely to have the same evidentiary value as a second sample showing a different blood alcohol reading. Failing to preserve a second breath sample deprives the suspect of a potent piece of evidence with which to test the integrity of the State's use of the breathalyzer's reading.

Further, the statutory right to obtain a second test retained by SB 144-FN does not establish a fundamentally fair process by which a suspect can obtain markedly probative evidence of his or her blood alcohol content at the time the State takes its sample. A suspect would face numerous practical difficulties in obtaining a second sample on his or her own. While in police custody, the suspect would have to locate an available, licensed technician capable of promptly performing a second test, no matter what time of day or night. Even if a defendant successfully obtained an independent second test, the results would not have the same evidentiary force as would a second test performed on the same machine at approximately the same time. We are unpersuaded that the right to pay for a similar test done at the request of the suspect by a pre-approved, State-certified technician diminishes the unconstitutionality of the proposed bill.

The rationale underlying what became the majority opinion in *Cornelius supra* supports our response. The ultimate *Cornelius* holding advanced two primary reasons why due process requires preservation of a second sample of breath in light of the statutory requirement of preserving a second blood or urine sample: (1) the technology existed for taking such a sample and the cost of it was reasonable; and (2) the prosecution, by choosing to take a breath sample rather than a blood or urine sample, could opt for the only evidentiary technique solely and completely in its control, despite the statute's requirement that the State preserve second samples of blood or urine when police chose to administer either of those

tests. *Cornelius*, 122 N.H. at 929, 452 A.2d at 467. The State's discretion in choosing the only test method which did not require a second sample undermined the integrity of the fact-finding process. *Id.* at 929–30, 452 A.2d at 467.

The due process holding in *Cornelius* responded to the scope of the claims asserted in that case and should not be limited to dilute notions of fundamental fairness. In fact, the government responded to the *Cornelius* decision, which recognized the value of a second sample, *Cornelius*, 122 N.H. at 929, 452 A.2d at 467, by providing throughout the State breathalyzers capable of preserving second samples at a reasonable cost. Two justices in *Cornelius* agreed that "[a]s technological advances occur, the use of which by law enforcement authorities will better enable the State to make more meaningful and real the rights guaranteed citizens under our constitutions, the dictates of basic fairness may require that the State avail itself of such technology." (Bois & Brock, JJ.) *Id.* at 927, 452 A.2d at 465. We are of the opinion that the dictates of basic fairness require the employment of the technology currently in place which preserves second samples of breath, blood, and urine.

Further, the State, as well as the DWI defendant, benefits from the preservation of a second sample. Providing a second sample for independent testing by a defendant may obviate, in many cases, the necessity of the time-consuming and expensive undertaking of a broadgauge collateral attack upon the integrity of the testing equipment. As a purely practical matter, providing a second sample may well be the most efficient means of protecting a DWI defendant's rights.

In addition, the legislative history of the implied consent laws, RSA 265:82–:92 (Supp. 1988), indicates the legislature's desire to achieve fairness by requiring preservation of a second sample. The implied consent law as initially enacted did not require that a second sample of blood or urine be kept, nor did it mention the breathalyzer as a method to prove intoxication. *See* Laws 1965, 238:1. In 1971, however, when the legislature amended the statute by lowering the blood alcohol level needed for conviction from .15 percent to .10 percent, and by allowing breath tests to be used as evidence of intoxication, it also required that sufficient quantities of blood and urine be taken to allow the suspect access to a sample for independent testing. Laws 1971, chs. 63–64. The *quid pro quo* for lowering the blood alcohol content level to .10 and implementing the breath test seems to have been the requirement to keep second samples, a requirement which was not feasible at the time for breath samples. *See State v. Shutt*, 116 N.H. 495, 496–97, 363 A.2d

406, 407 (1976). The Senate's discussion of the amendments indicates that preserving a second sample for the DWI suspect was intended to provide "a protection for the person who may be arrested." N.H.S. JOUR. 330 (1971). In addition, when discussing the statutory addition of the use of the breathalyzer, the legislature expressed profound concern for the protection of individual rights. *See* N.H.S. JOUR. 252–62 (1971). Although the precise phrase was not used, the legislature was expressing its desire to insure fundamental fairness.

Notions of fundamental fairness in the context of due process as a constitutional right are matters for determination by the judiciary, not the legislature. However, judges should not be so insulated or detached from concerns of citizen legislators to discount out of hand a deliberative process which touched upon concepts of fairness in the State's dealings with its citizens.

We note that the practical difference between Justice Johnson's opinion and ours is a small one. He concludes that due process requires a second sample where a reading of .10 percent or greater is an element of the offense, rather than simply evidence of it. RSA 265:89 (Supp. 1988) provides, in part, that evidence of blood alcohol content of .10 percent or more constitutes prima facie evidence that a defendant was under the influence of intoxicating liquor. Such prima facie evidence is evidence of such force as to warrant, but not compel, a finding of intoxication in the absence of any other evidence. It would seem that the distinction between Justice Johnson's and our view is a thin one.

■ Finally, we think the issue ultimately boils down to this: we do not believe in the infallibility of human agencies, any more than we believe in infallible technology. Until we are prepared to accept both, we take the view that when the State conditionally requires that a person submit to a breath, blood, or urine test conducted by the State, fundamental fairness requires that an additional sample be available to the person tested for his or her own independent analysis. In the light of present day scientific advances, due process, it seems to us, requires a second sample. We answer question one in the affirmative.

The transferred question also asks whether the proposed bill violates the Federal Constitution. Because we would find the bill unconstitutional under the State Constitution, we need not address in detail its constitutionality under its federal counterpart. We note, however, that the United States Supreme Court in *California v. Trombetta*, 467 U.S. 479 (1984), upheld the constitutionality of a statute that did not require preservation of a second breath sample

for a defendant's testing. Thus, SB 144-FN likely would pass muster under the Federal Constitution. For the reasons stated above, however, we are not persuaded that the reasoning used in *Trombetta* should be adopted under our Constitution.

Question (2) asks whether SB 144-FN violates the equal protection clause of either the United States or the New Hampshire Constitution. We answer that it would not. The first inquiry concerning equal protection, under both the State and Federal Constitutions, is "whether persons similarly situated are being treated differently under the statutory law." *State v. Callaghan,* 125 N.H. 449, 451, 480 A.2d 209, 210 (1984) (quoting *Gazzola v. Clements,* 120 N.H. 25, 29, 411 A.2d 147, 151 (1980)); *see also Locke v. Ladd,* 119 N.H. 136, 138, 399 A.2d 962, 963 (1979). Because SB 144-FN does not appear to make any classification or distinction among individuals or groups, we are of the opinion that equal protection is not implicated under either the State or the Federal Constitution.

Question (3) asks whether SB 144-FN violates any other provisions of either the United States or the New Hampshire Constitution. The court respectfully declines to answer this question. "In view of the generality of this question we do not deem it within our province to speculate upon whether other constitutional issues might be raised." *Opinion of the Justices,* 101 N.H. 518, 522–23, 131 A.2d 818, 821 (1957).

We therefore answer question one in the affirmative, question two in the negative, and respectfully decline to respond to question three.

April 26, 1989

DAVID A. BROCK
WILLIAM F. BATCHELDER

OPINION OF JUSTICES SOUTER AND THAYER

Under the present statute, when the police extract a sample of blood from a person arrested for driving under the influence of alcohol or drugs for the purpose of performing a chemical test to determine blood alcohol content, that person has a right to the preservation of a second sample. RSA 265:86 (Supp. 1988). SB 144-FN would amend RSA 265:86 (Supp. 1988) by eliminating the requirement that police take and preserve a second sample of blood, *inter alia.* The statute would then provide that a DWI defendant shall have the "right at his own expense to have similar tests made by a person of his own choosing who is qualified and competent

to conduct the tests, as determined by the director of the division of public health services under RSA 265:85, and shall be so informed by the law enforcement officer at the same time as the person is requested to permit a test under the provisions of RSA 265:84." SB 144-FN, section 1. The amendment would further provide that "[i]t shall not be a prerequisite to the admission of the state's test result that the state provide an arrested person with a sample of the blood, breath or urine which it has taken for testing purposes." *Id.*

Question (1) asks whether SB 144-FN would violate the due process requirements of either the State or the Federal Constitution. For the following reasons, we answer that it would not. We begin by making an analysis of the protection afforded under the New Hampshire Constitution.

The issue presented is whether, as a prerequisite to the admission of the State's test results at trial, part I, article 15 of the State Constitution requires the State to obtain and preserve evidence for a defendant's use. Although we have never had an opportunity to address the precise question now presented to us, this court has previously addressed the due process requirements of the State Constitution as applied to blood alcohol tests in *State v. Martin,* 125 N.H. 672, 484 A.2d 1176 (1984), and *State v. Cornelius,* 122 N.H. 925, 452 A.2d 464 (1982).

In *State v. Martin* we held that when a driver was arrested for DWI there was neither a statutory nor a constitutional right to a chemical test or preservation of a sample for testing, when the State itself did not conduct any such test. 125 N.H. at 674–77, 484 A.2d at 1178–80. Because chemical testing was not the only source of relevant evidence and because it does not always provide more reliable evidence than traditional observation and investigation, the court ruled that such evidence lacked "any monopoly on probative value" and therefore that it was "not fundamentally unfair to prosecute or convict without it." *Id.* at 676, 124 N.H. at 1179.

This court did recognize a limited due process right to a second sample in *State v. Cornelius,* where it held that a DWI defendant had a constitutional right to a second breath sample when the police chose to administer a breath test. *Cornelius,* 122 N.H. at 929–30, 452 A.2d at 467 (Batchelder, J., dissenting); *see id.* at 928, 452 A.2d at 465–66 (Douglas, J., concurring specially) (due process obligation became effective on February 1, 1983). At the time of that decision, RSA 265:86 required the police, when conducting a chemical test to determine blood alcohol content, to preserve a second sample of blood or urine, but did not require that a second breath sample be

preserved. Accordingly, by choosing to administer a breath test, the police could avoid the requirement that they preserve a second sample for the defendant's use. *See Cornelius*, 122 N.H. at 929, 452 A.2d at 467 (Batchelder, J., dissenting).

The rationale underlying the holding in *Cornelius* was that due process was violated because the police were able to control a defendant's access to a second sample through their unbridled discretion in selecting the type of test to be administered. As Justice Batchelder noted:

> "[W]hen the law enforcement agency chooses the breath test it chooses the evidentiary technique that is solely and completely in the control of the prosecution despite the fact that other courses permitting independent analysis by the defendants are available. Consequently, this policy undermines the integrity of the fact-finding process; therefore, the due process questions presented by these defendants are of constitutional dimensions."

*Cornelius*, 122 N.H. at 929–30, 452 A.2d at 467 (Batchelder, J., dissenting). Because, however, SB 144-FN would eliminate any requirement of second sample preservation, the proposed amendment would abolish the State's discretion to choose among tests, thereby eliminating the issue that *Cornelius* addressed.

Neither *Martin* nor *Cornelius* addressed the issue before us, however, and our due process examination for present purposes must therefore address the question whether due process as fundamental fairness requires the State to provide DWI defendants with a second sample of any bodily substance analyzed by the State to determine blood alcohol content. *See Denney*, 130 N.H. at 220, 536 A.2d at 1243. In *California v. Trombetta*, 467 U.S. 479 (1984), an opinion delivered for the Court by Justice Marshall, the United States Supreme Court examined the issue of whether the due process clause of the fourteenth amendment requires States to preserve breath samples as a condition of introducing the State's test results at trial. In holding that the States were not required to preserve such samples, the Supreme Court reversed the California Court of Appeals, which had relied, in part, on the fact that law enforcement agencies had the capacity to preserve breath samples for DWI defendants in holding that due process required the State to preserve second samples for the use of defendants. *Id.* at 483–84 (citing *People v. Trombetta*, 190 Cal. Rptr. 319, 320–21, 323 (Ct. App. 1983)).

The Supreme Court began its analysis by noting that the "Due Process Clause of the Fourteenth Amendment requires [States] to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment." *Trombetta*, 467 U.S. at 480 (citing *United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83 (1963)). The Court went on to state that the exact issue in *Trombetta*, however, was "whether the Fourteenth Amendment also demands that the State preserve potentially exculpatory evidence on behalf of defendants," *Trombetta*, 467 U.S at 481, an issue the Court had not previously addressed. *Id.* at 486. The Court then focused its due process inquiry on the standard of fundamental fairness, which requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id.* at 485.

In applying that standard to the issue before it, the Court relied upon a standard of constitutional materiality requiring the State to preserve evidence that "might be expected to play a significant role in the suspect's defense." *Id.* at 488. To be constitutionally material, the Court held, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Because the Court found the chances that a second breath sample would have exculpatory value to be extremely low, *id.* at 489, and because the respondents had alternative means of demonstrating their innocence, *id.* at 490, the Court held that due process under the Federal Constitution did not require "that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial." *Id.* at 491.

We find this case persuasive and apply its reasoning in construing the State Constitution. It is important to recognize that no sample may be taken unless the police first have probable cause to arrest. RSA 265:84 (Supp. 1988). At that point there is reason to believe that a breath or other sample would have only inculpatory value, and no reason to believe it would be exculpatory. It is therefore our opinion that a second sample of blood, breath or urine is not constitutionally material, and we conclude that the State has no duty to take affirmative steps to obtain and preserve such evidence. Moreover, with respect to breath samples, where machine testing follows immediately on obtaining the sample, we agree with the United States Supreme Court's observation that once the test of a breath sample indicates that a DWI defendant is legally impaired, a second breath sample is "much more likely to

provide inculpatory than exculpatory evidence." *Trombetta,* 467 U.S. at 489.

Furthermore, even if we were to assume that such evidence has an exculpatory value, DWI defendants can respond to the State's case by other reasonably available means. *See Trombetta,* 467 U.S. at 490. The State's test results may be attacked by contesting the scientific reliability of the machine itself or by demonstrating faulty calibration, extraneous interference with machine measurements, and operator error. *See id.* at 490. RSA 265:90 (Supp. 1988) provides DWI defendants the opportunity to require the presence, at trial, of the person who administered the blood alcohol test. The General Court has also provided for the adoption of rules and procedures for the administration of blood alcohol tests, RSA 265:85 (Supp. 1988), adherence to which may be a subject of cross examination. Although two of our brothers reject those possibilities as somehow insignificant, this position is perplexing in view of this court's unanimous reliance on the same analysis as a basis for our very recent decision in *State v. Symonds,* 131 N.H. 532, 536, 556 A.2d 1175, 1179 (1989).

Finally, the proposed statutory structure would still allow defendants to have a second independent test performed at their own expense. *See* SB 144-FN. Accordingly, DWI defendants have alternative means of contesting the State's case. *See Trombetta,* 467 U.S. at 490.

We are, therefore, of the opinion that SB 144-FN, if enacted, would not violate the requirements of due process under our State Constitution. The State should be able to introduce blood alcohol test results in evidence without first providing a second sample of blood, urine or breath to the DWI defendant from whom it obtained the sample tested.

Before leaving the State due process issue, we wish to note two aspects of the separate opinions of the other members of the court. First, we are concerned about their reliance on legislative history in their analysis of due process requirements. Although the legislature's views on fair procedure are entitled to respectful consideration, they are not necessarily views based on due process and they are not constitutionally dispositive on what is required as fundamentally fair. Furthermore, our brothers fail to reconcile their emphasis on what the legislature required in the past with the obvious fact that if the proposed bill should become law, the General Court's notion of fairness will obviously have changed, to the point of believing that fairness does not require the guarantee

of a second sample of blood, breath or urine to DWI defendants whose test results are to be used as evidence.

Second, we call attention to the significance of their statement that: "[W]e think that the issue ultimately boils down to this: we do not believe in the infallibility of human agencies, any more than we believe in an infallible technology." This statement addresses the issue of the reliability of evidence, and expresses skepticism that blood-alcohol test evidence is as reliable as it should be. If the other members of this court are skeptical to this extent, then the focus of their objection should be on the admissibility of all such evidence, regardless of whether two samples are taken for testing. If the reliability of such evidence is substantially outweighed by its prejudicial potential, it should be excluded under New Hampshire Rule of Evidence 403, without any need to resort to the guarantee of due process. If, on the other hand, its reliability does rise to the admissible level, we see no basis to conclude that due process requires back-up testing. We can only add that the other members of the court have cited no particular basis to justify the degree of their doubt, and none has been presented to us.

■ Under the Federal Constitution, we reach the same conclusion in answering question (1) that we have explained above. Because the Federal Constitution provides no greater protection than the State Constitution, *see Trombetta*, 467 U.S. 479, we are of the opinion that SB 144-FN would not violate the due process requirements imposed upon the States by the fourteenth amendment. Since SB 144-FN does not violate notions of due process under either the State or the Federal Constitution, we answer question (1) in the negative.

We agree with the opinions of the Chief Justice and Justice Batchelder in response to questions (2) and (3).

April 26, 1989

DAVID H. SOUTER
W. STEPHEN THAYER, III

## OPINION OF JUSTICE JOHNSON

■ The legislature proposes to amend RSA 265:86 (Supp. 1988) by eliminating any requirement that, when police extract a sample of blood from a DWI suspect for blood alcohol testing, they preserve a second sample for the suspect's own use. It would further add the following language to the statute: "It shall not be a prerequisite to the admission of the state's test result that the state provide an arrested person with a sample of blood, breath or urine which it

has taken for testing purposes." SB 144-FN. My response to the legislature's first question regarding the proposed amendment is that such an amendment would violate the due process requirements of the New Hampshire Constitution, where the blood alcohol test result is itself an element, as opposed to mere evidence, of an offense. Where the test result is not itself an element of the offense, but only evidence, I would find no violation of the due process requirements of the New Hampshire Constitution or the Federal Constitution. As to questions (2) and (3), I join in the conclusion of my colleagues.

■ Fundamental fairness, the relevant standard for determining what due process requires in this realm, certainly demands "that criminal defendants be afforded a meaningful opportunity to present a complete defense," *California v. Trombetta*, 467 U.S. 479, 485 (1984), and, to this end, imposes a duty on the State to preserve evidence at least in those circumstances where its exculpatory value is apparent and comparable evidence is unavailable, *id.* at 489. I conclude that the State cannot meet this standard without preserving a second sample for the benefit of defendants charged with violating RSA 265:82, I(b) (Supp. 1988) or RSA 265:82-a, II or III (Supp. 1988).

The first of these three sections prohibits anyone from driving a vehicle "[w]hile there is 10/100 percent or more by weight of alcohol in his blood." RSA 265:82, I(b) (Supp. 1988). The latter two sections provide that a person is guilty of aggravated driving under the influence if he drives with a blood alcohol level of "10/100 percent or more by weight" under certain specified circumstances, RSA 265:82-a, II (Supp. 1988), or drives under any circumstances with a blood alcohol level of "20/100 percent or more by weight," RSA 265:82-a, III (Supp. 1988). In each instance, the defendant's blood alcohol content is, in essence, an element of the offense, *see* RSA 625:11, III, which the State must prove before the jury may convict. Unlike the offenses that merely require evidence that the defendant was under the influence of alcohol, RSA 265:82, I(a); RSA 265:82-a, I, these offenses in effect require that, as part of its case, the State present the results of a blood alcohol test indicating that the defendant had the necessary blood alcohol content to be in violation of the statute.

Absent preservation of a second sample, a defendant charged under one of these three sections is denied the only evidence that is comparable to that available to the State and necessary to his ultimate conviction or acquittal. If he hopes to exculpate himself, the evidence the defendant presents in such cases must go not to

whether he was under the influence of alcohol, but to whether the State correctly calculated his blood alcohol content. Although the defendant can attempt to challenge the State's results by showing that he did not appear to be inebriated, or by questioning the accuracy of the testing equipment or alleging some error in its operation, this evidence is unlikely to impress a jury faced with the results of what the State contends was a test in accord with specified procedures. Moreover, although the defendant might concededly uncover machine malfunction or operator error by other means, his ability to do so may be hampered by his comparative lack of familiarity with the workings of the testing equipment or with the prescribed operating procedures.

In short, where a blood alcohol reading of .10 or .20 is essentially an element of the offense with which a defendant is charged, test results do in fact have a monopoly on probative value. *Cf. State v. Martin*, 125 N.H. 672, 676, 484 A.2d 1170, 1179 (1984) (acknowledging that "it is by no means a subject of judicial notice that [chemical] testing always produces more reliable evidence than traditional observation and investigation" and recognizing that such a test has no monopoly on probative value when the State does not introduce test results of its own). To the extent that our recent opinion in *State v. Symonds*, 131 N.H. 532, 536, 556 A.2d 1175, 1178–79 (1989) contains language to the contrary, I consider that language to be dictum and in no way relevant to the holding, on which I based my decision to join that opinion, that the warning the defendant received was sufficient to satisfy due process.

It is, furthermore, of little consequence that the reading derived from the second sample may seldom differ from the State's own reading, thus infrequently providing the defendant exculpatory evidence. Whether or not the exculpatory value of a particular sample is clear, it is certainly clear that meaningful exculpatory evidence is unlikely to be uncovered unless a second sample is preserved. Moreover, unlike requirements that the State generally preserve exculpatory evidence, the second sample requirement does not expose the State to the great expense and inconvenience that might accompany compelled preservation of all manner of evidence on the off-chance that it might prove useful to a defendant at some stage in the preparation of his case. Preservation of a second sample requires no guesswork on the State's part as to what may be relevant and exculpatory evidence and imposes no new burden, as the State has preserved blood samples routinely since 1971 and breath samples since 1983. Instead, it insures the defendant access

to the only evidence that can practically be said to hold out the possibility of a viable defense.

■ The purpose of a criminal trial is to discover the truth in a manner that insures meticulous protection to the rights of the accused. *State v. Reed*, 106 N.H. 140, 141, 207 A.2d 443, 444 (1965). Where the result of a blood alcohol test is an element of the offense with which a defendant is charged and arrival at the truth depends on the accuracy of the test result, the concept of fundamental fairness embodied in the New Hampshire Constitution certainly requires that the State continue to preserve a second sample and make it available to defendants for a reasonable period.

Although I have discussed the requirements of fundamental fairness in terms set forth in *California v. Trombetta*, I do not intend to suggest that the protections that fundamental fairness requires under the New Hampshire Constitution are limited to those required under the United States Constitution. *See State v. Denney*, 130 N.H. 217, 536 A.2d 1242 (1982).

April 26, 1989

WILLIAM R. JOHNSON

*Jeffrey R. Howard*, acting attorney general (*David S. Peck*, assistant attorney general, on the memorandum), filed a memorandum in support of negative answers to the propounded questions.

*New Hampshire Association of Criminal Defense Lawyers* (*Cathy J. Green* on the memorandum), filed a memorandum in support of an affirmative answer to questions one and three.