Rockingham
No. 98-143

THE STATE OF NEW HAMPSHIRE

v.

BRIAN SULLIVAN

December 28, 1999

*Philip T. McLaughlin*, attorney general (*Constance N. Stratton*, assistant attorney general, on the brief and orally), for the State.

*Kenna, Johnston & Sharkey*, of Manchester (*Bruce E. Kenna* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Brian Sullivan, was charged with negligent homicide and five counts of second degree assault arising out of an automobile accident. The State brings this interlocutory

appeal from an order of the Superior Court (*Murphy*, J.) granting the defendant's motion to suppress evidence of his blood alcohol concentration. *See* RSA 606:10, II(a) (1986). We affirm and remand.

The charges against the defendant stem from an automobile accident on April 28, 1997, in which one person was killed and others were seriously injured. After speaking with and observing the defendant at the scene of the accident, a New Hampshire State Police officer arrested him for "felony driving while under the influence of intoxicating liquor" and placed him in the rear of his cruiser. The officer then read the defendant his rights from the Administrative License Suspension Form (ALS form). Although the defendant did not initial or sign the form, he acknowledged that these rights were read to him. The ALS form stated, in part:

> You are now being asked to submit to a test or tests at the discretion of a law enforcement officer in order to determine the alcohol and/or drug concentration in your system. You may be asked to perform a breath, blood, urine or physical test, or any combination of these. . . . You . . . have the right to obtain a sample of your breath, blood or urine for testing at your own expense.

The defendant was then taken to Exeter Hospital where two blood samples were drawn. The State Public Health Laboratory received the samples on April 28, 1997. On or about May 29, 1997, the laboratory mailed a copy of the defendant's test results to the investigating officer of the New Hampshire State Police. The defendant first received copies of the test results on September 26, 1997, in his discovery packet from the Rockingham County Attorney's office. Due to an apparent clerical error, the State laboratory had mistakenly mailed the test results to the investigating officer instead of to the records division of the State Police, which routinely mails copies of test results to both defendants and investigating officers.

On October 2, 1997, the defendant, through counsel, notified the State laboratory that he wanted to have an independent test performed on the second sample of blood that had been collected and requested that the second sample not be destroyed. The laboratory notified the defendant that the second sample had been destroyed some time in June or July 1997, after the thirty-day period set forth in RSA 265:86 had expired.

The defendant filed a motion *in limine* to suppress the results of his blood alcohol tests. The defendant argued that the State's destruction of the blood samples before he was informed of the

results prevented him from independently testing the blood samples and, therefore, violated his due process rights under Part I, Article 15 of the New Hampshire Constitution. The trial court granted the defendant's motion, and this appeal followed.

On appeal, the State argues that its inadvertent violation of a statutory provision requiring that it provide the defendant with timely notice of his blood alcohol test results did not deprive him of due process. "We will not overturn the [trial] court's ruling unless it is erroneous as a matter of law." *State v. Symonds*, 131 N.H. 532, 534, 556 A.2d 1175, 1177 (1989).

RSA 265:84-:93 set forth the statutory scheme relating to the implied consent of motor vehicle drivers to submit to blood alcohol testing. "When a collision results in death or serious bodily injury to any person, . . . [a] law enforcement officer shall request a [qualified person] to withdraw blood from each driver involved . . . for the purpose of testing for evidence of alcohol content or controlled drugs." RSA 265:93 (Supp. 1998). "The sample of blood taken . . . shall be of sufficient quantity to allow 2 tests" — one by the State and one by the arrested person. RSA 265:86, I (1993). "[T]he testing laboratory shall retain for a period of 30 days subsequent to the test conducted . . . a quantity of [the blood] sample sufficient for another test, which quantity shall be made available to the [arrested person] or his counsel upon request." *Id.* "A copy of the report of any such test shall be furnished by the law enforcement agency to the person tested within 48 hours of receipt of the report by the agency . . . ." RSA 265:84 (1993).

Before any test may be given, the law enforcement officer must "[i]nform the arrested person of his right to have a similar test or tests made by a person of his own choosing" and "[a]fford him an opportunity to request such an additional test." RSA 265:87 (1993). "The failure or inability of an arrested person to obtain an additional test shall not preclude the admission of any test taken at the direction of a law enforcement officer." RSA 265:86.

■ "On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Farrow*, 140 N.H. 473, 474, 667 A.2d 1029, 1031 (1995) (quotation omitted). "This court will avoid construing statutes in a manner that would produce an unjust and seemingly illogical result." *Id.* at 476, 667 A.2d at 1032. "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Id.* at 475, 667 A.2d at 1031.

The State argues that the test results should not be suppressed because the statute does not expressly require suppression where a report of the results is not mailed to the defendant in a timely fashion, and because the statute provides that the defendant's failure or inability to obtain an additional test does not preclude admission of the State's test results. We disagree.

■■ RSA 265:86, I, provides that the testing laboratory shall retain for thirty days after the test is conducted a quantity of the sample sufficient for another test, and that the laboratory shall make that quantity available to the defendant upon request. RSA 265:84 provides that the State is responsible for furnishing the defendant with the test results within forty-eight hours of its receipt of them. Therefore, the defendant could have reasonably relied on the State's provision of the test results to notify him that the thirty-day period had begun to run. In fact, it would be reasonable for a defendant not to request his blood sample until he had received his test results, because if the State's test showed no blood alcohol concentration, or a very low one, the defendant would have no reason to request an independent test. Thus, although the defendant had statutory notice that the second sample would be destroyed thirty days after the test was conducted, this notice was meaningless because RSA 265:84 gave rise to a reasonable expectation that the State would notify him of the test results before the laboratory destroyed the samples. We conclude that when RSA 265:84 and :86, I, are considered together, the statutory scheme required the State to provide the defendant with timely notice of the test results. In light of the obvious objectives of the legislation and under the circumstances of the case, we further conclude that suppression is an appropriate remedy for the State's statutory violation. *Cf. State v. Flynn*, 123 N.H. 457, 464, 464 A.2d 268, 272 (1983).

We reject the State's argument that the results should not be suppressed because RSA 265:86 provides that "[t]he failure or inability of an arrested person to obtain an additional test shall not preclude the admission of any test taken at the direction of a law enforcement officer." We interpret this provision to exclude situations where the failure or inability of the defendant to obtain an additional test is caused by the State. *Cf. State v. Winslow*, 140 N.H. 319, 321-22, 666 A.2d 946, 948 (1995) (DWI defendant's failure to obtain additional test did not warrant suppression where State did not frustrate his attempt to obtain one). In this case, the statutory scheme gave rise to a reasonable expectation that the State would

notify the defendant of the test results before the laboratory destroyed the samples. Because the State failed to provide timely notice of the test results, the defendant did not request his second blood sample until after the laboratory had destroyed it. Therefore, the defendant's inability to obtain an additional test was caused by the State's failure to provide timely notice.

We also reject the State's argument that the alternative means available to the defendant of attacking the test results obviates the need for suppressing them. The State cites *Symonds*, 131 N.H. at 536, 556 A.2d at 1179, to support its argument that the defendant could "raise a plethora of attacks upon the State's evidence, e.g., machine malfunction, faulty calibration, extraneous interference, and operator error, without having to resort to the [blood] sample." *Symonds*, however, is distinguishable from the present case. In *Symonds*, the police informed the defendant that he had thirty days to retrieve his second breath sample and that if he did not retrieve the sample during that time period, it would be destroyed. *See id.* at 533, 556 A.2d at 1177. Therefore, the defendant in *Symonds* had meaningful notice of the period during which his second breath sample would be available. In light of these facts, we noted the alternative means of attacking the State's evidence available to the defendant. *See id.* at 536, 556 A.2d at 1179.

Furthermore, such alternative means of attacking the State's evidence,

> while certainly significant, [are] not likely to have the same evidentiary value as a second sample showing a different blood alcohol reading. Failing to preserve a second [blood] sample deprives the suspect of a potent piece of evidence with which to test the integrity of the State's use of the [test results].

*Opinion of the Justices*, 131 N.H. 583, 587, 557 A.2d 1355, 1357 (1989). Therefore, these alternative means of attacking the State's evidence do not obviate the need for suppressing the test results. Accordingly, we conclude that the trial court properly granted the defendant's motion to suppress.

Because we conclude that the statutory scheme required that the State provide the defendant with timely notice of the test results and that suppression was a proper remedy for the State's statutory violation in this case, we need not reach the parties' constitutional arguments. *Cf. Quinlan v. City of Dover*, 136 N.H. 226, 230, 614 A.2d

1057, 1059 (1992) (sustaining trial court's decision where valid alternative grounds support it).

*Affirmed and remanded.*

THAYER, J., did not sit; the others concurred.